FILED
2012 Jan-31  AM 09:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

2012 JAN 30 ⫐ P 12: 33

U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

BABATUNDE KAREEM AGORO

PETITIONER,

VERSUS                              **CASE NO: 11-CIV-3951**

ERIC HOLDER, et. Al,

RESPONDENT

## TO: HONORABLE JUDGE MICHAEL T. PUTNAM

## HABEAS CORPUS PETITION PURSUANT TO 28 U.S.C. SECTIONS 2241 AND PETITIONER'S REPLY TO RESPONDENT ANSWERS AND RETURNS

## JURISDICTION

Federal Jurisdiction is proper here in the Northern District of Alabama,

Under 28 U.S.C. Sections 2241. The General Habeas Corpus Statutes provides that

The Federal Courts have the Authority to grant a writ of Habeas Corpus to a person

Held "in violation of the Constitution of Laws and Treaties of the United States," 28

U.S.C. Section 2241 (C)(3). The Petitioner Habeas Petition challenged the unlawful

Detention of ICE/DHS and this Court retains Jurisdiction over Petitioner's claim.

Petitioner claims that the writ of Habeas Corpus should be available to him so

That the Courts can review the Petitioner's claim.

This Court has Habeas Jurisdiction over this action under 28 U.S.C. Section

1

2241, and Federal Question Jurisdiction under 28 U.S.C. Section 1331 and the Declaratory Judgment act 28 U.S.C. Section 2201 and 28 U.S.C. Section 2241, Confers jurisdiction upon the federal courts to hear these cases." Zadvydas v. Davis, 533 U.S. 678, 687, 121 S. Ct 2491, 150 L. Ed. 2d 653 [2001][citing 28 U.S.C. Section 2241] (c)(3)(Authorizing any person to claim in federal court that he Or she is being held "In custody in violation of the Constitution of laws.... of the United States").

The Supreme Court in Zadvydas noted that various pre-IIRIRA statutory changes "Left habeas untouched as the basic method of obtaining review of continued Custody after a deportation order had become final." Id. [citation omitted]. And While the more recent Congressional enactments limit the circumstances in which Judicial review of deportation decisions is available, none applies to "deprive an Alien of the right to rely on 28 U.S.C. Section 2241 to challenge detention that is Without statutory authority." Id. Thus, Zadvydas concluded, ["28 U.S.C. Section 2241"]. Habeas corpus proceedings remain available as a forum for statutory and Constitutional challenges to post-removal-period detention." 533 U.S. at 688.

## BACKGROUND HISTRORY

Agoro is a male native and citizen of Nigeria, who was admitted to the
United States on January 5, 1980.

On December 1st 1983, Agoro status was adjusted to that of Lawful Permanent
Resident.

On April 1, 1992 Agoro was convicted by guilty plea in the United States
District Court for the District of Rhode Island for the offense of credit card
Fraud in violation of 18 U.S.C. Section 1029[a][2].

On August 4, 1993, Agoro was convicted by plea for the offense of
Failure To Appear for sentencing, in violation of 18 U.S.C. Section 3146[a].

On October 28, 1996, The United States Immigration and Naturalization
Service ["INS"] initiated proceedings against Agoro with the filing in
Immigration Court of an order to Show Cause ["OSC"], charging Agoro with
Being deportable from United States pursuant to INA Section 241 [a][2][ii],
As an alien convicted of two crimes of moral turpitude. Agoro was later
Additionally charged for Failure To Appear.

On September 19, 1997, Immigration Judge Sandy K. Hom determines
That Mr. Agoro was deportable both for having been convicted of two crimes
Involving moral turpitude and an aggravated felony offense, and ordered him
Deported to Nigeria.

On October 20 1997, Mr. Agoro appealed the decision of the Immigration
Judge to the Board of Immigration Appeals. On January 22 1999 Board found
That Immigration Judge Hom failed to explain the basis for his findings
Consequently, the Board remanded the matter to the IJ to "Provide the

3

Parties an opportunity to fully address the issues of deportability and relief From deportation.

On May 21 1999 IJ. Hom again found Mr. Agoro deportable without the Assistance of Counsel for the offenses contained in the order to show cause ("OSC") and ordered him deported to Nigeria. On June 23 1999 Agoro Appealed the decision of the Immigration Judge to the Board, which Dismissed the Appeal On August 31 1999, because it was untimely filed.

The petitioner alleges that, there were three hearing dates before IJ Hom, they were On June 6 1997, On August 15 1997, and On September 19 1997, the petitioner was represented by Attorney Hubert L. Marshall at only The first of these hearing. the other hearings were conducted without the Assistance of Counsel. Attorney Hubert L. Marshall failed to Appear at the Petitioner's final deportation hearing. See: **UNITED STATES V. BAILEY** 56 F. SUPP. 2d 381, 384 (SDNY 1999) Finding Incompetent Counsel who failed To Appear at Final Deportation Hearing. This constitutes Ineffective Assistance Of Counsel on Attorney Hubert L. Marshall prejudicial to the petitioner.

The petitioner alleges that, after the (BOARD) dismissed the petitioner's Appeal because it was untimely filed, Mr. Marshall did not inform the petitioner, and the petitioner is not aware of the BOARD dismissal of his appeal, and the failure of Attorney Hubert L. Marshall to notify the petitioner Of the ramification thereof of his Appeal is ineffective assistance of Counsel And prejudicial to the Petitioner and amount to an exceptional circumstances Warranting reopening. See: **ARIS V. MUKASEY** 517 F.3d 595 (2nd Cir.

4

2008). This Court held that a lawyer who misadvises his client concerning the Date of an Immigration hearing and then fails to inform the client of the Deportation order entered in absentia (or the ramifications thereof) Has Provided ineffective assistance. Indeed, the factual scenario surrounding Petitioner Agoro case and mirror that of ARIS thereby mandating the same result, because Attorney Hubert L. MARSHALL did not inform AGORO of the (BOARD) dismissing his Appeal until Four Years later when AGORO went to Another Law Firm seeking to Apply for Citizenship, it was then AGORO found Out that his Appeal was dismissed by the BOARD.

The Petitioner challenge and assert that he is not subject to an order of Deportation because the order of deportation is improper and or unlawful due To Ineffective assistance of Counsel. The Petitioner was denied his right to Representation at the hearing, because Counsel failed to appear at the final Deportation hearing, The Immigration Judge conducted the hearing without Counsel depriving the petitioner of representation and advice of Counsel as is His entitlement and to his detriment, and Mr. Marshall provided ineffective Assistance by failing to file an appeal to the [BOARD] and failed to notify the Petitioner of the [BOARD'S] decision on the appeal that was submitted as untimely, Mr. Marshall sent a letter to the IJ, that he was sick on the Petitioner's final deportation hearing. Success on that claim on appeal would not Cause any deportation, the Counsel failed to provide the Petitioner the notice of the [BOARD] decision.

Given rise to presumption of prejudice warranting reopening.

On April 10, 2003, Mr. Agoro filed a motion to reopen/remand through

Counsel with the BOARD, The Board determined, however, On February 10, 2004, that it had no Jurisdiction over the motion, because Jurisdiction Remained with IJ Hom due to Mr. Agoro's earlier failure to timely appeal. On March 22, 2004, Mr. Agoro filed a motion to reopen with IJ Hom who Dismissed the motion as untimely. On May 11 2004, Mr. Agoro appealed the Decision of the IJ to the [BOARD].

On February 2, 2005, the Board Sua-Sponte granted reopening and Remanded the matter to the IJ for consideration of 212(C) waiver in light of a Fundamental change in law, citing **INS V.St. Cyr.** 533 U.S. 289. On November 17 2005 Mr. Agoro testified before IJ in support of his application For 212 (C) relief. On November 29, 2005, the Immigration Judge denied Petitioner's request for a waiver pursuant to INA Section 212 (C) as a matter Of discretion, and ordered Agoro deported to Nigeria based on the charges Set forth in the Order to Show Cause. Subsequently, On December 23 2005, Mr. Agoro timely appealed the decision of the IJ to the Board. On September 27 2007, the Board dismissed the appeal and denied Mr. Agoro's motion to remand. Agoro subsequently filed a petition for review from that decision to The Court was denied AGORO V. MUKASEY 286 Fed. App'x 758 (2nd Cir. 2008).

On January 15, 2009, Mr. Agoro filed a motion to reopen with the Board Seeking the Board to exercise its Sua Sponte powers in light of the ninth Circuit decision in **Renteria-Morales V. Mukasey**, 551 F.3d 1076 99th Cir. 2008), which held that a criminal conviction for Failure To Appear for criminal Proceedings does not constitutes Aggravated felony. On March 17, 2009, the

Board denied the motion to reopen, declining to exercise its Sua Sponte Authority as Mr. Agoro's case arose in the Second Circuit, and thus the BIA Was not bound by a decision of the ninth Circuit.

Mr. Agoro ask his Counsel to Petition for review of the Board decision of March 17, 2009, the Counsel did not file an appeal after being told by the Petitioner. This constitutes ineffective assistance of Counsel See: **RABIU V. INS** Supra 662-884, addressing ineffective assistance of Counsel where Petitioners Counsel failed to file for relief from deportation, this Court held Ineffective assistance of Counsel may form the basis on which to determine That due process has been violated even in the absent of a specific **Lozada** claim. The Second Circuit views the breaches of an Attorney obligation to his Client that at issue in this case as violations implicating the fundamental Fairness of the proceedings in violation of the fifth amendments of due Process clause ''Id''.

On April 16, 2009, Mr. Agoro filed a motion to reconsider and to stay Deportation with the Board. On May 12, 2009, The Board denied the motion, The Court dismissed a subsequent Petition For Review of that decision On September 3, 2009. AGORO V. HOLDER, Docket NO: 09-2425. Concluding ''THAT ALTHOUGH PETITIONER'S'' contention that he was not convicted of an Aggravated felony does present **''A QUESTION OF LAW'**. See: 8 U.S.C. Section 1252 (a)(2)(D).

On October 15, 2009, Mr. Agoro filed a Motion To Reopen with the BOARD arguing that his Counsel before IJ Hom rendered Ineffective Assistance by failing to Argue that Mr. Agoro's conviction for '' Failure To

Appear" did not constitute an Aggravated Felony. Mr. Agoro asserts that his
Attorney failure to raise the issue of whether a "Failure To Appear" for
Sentencing constitutes aggravated felony **"HURT"** Mr. Agoro and cause
**"PREJUDICE",** Further, it appears that the fact that the conviction was
Considered an aggravated felony factored into the IJ'S balancing of the
Factors in reaching a conclusion that the conviction that provided the
Foundation for the **"ORDER TO SHOW CAUSE"** constitutes a negative factor
Of a serious nature. It is therefore upon ["Mr. AGORO"] to present unusual
And outstanding equities to outweigh the evidence of his undesirability, thus,
It cannot be said for certain that the result of the IJ'S decision would have
Been the same had it been argued that the conviction did not constitute an
Aggravated felony.

On November 16, 2009, The Board denied the motion concluding that
Mr. Agoro's motion was time and numerically barred. Further, the
Board declined to exercise its Sua Sponte, asserting that Mr. Agoro
"Incorrectly contends that his "Failure To Appear" argument was never
Raised previously, due to ineffective assistance [Mr. Agoro]'s claim that his
Conviction was not an aggravated felony and, therefore, he is not subject to
Deportation as charged, was addressed and rejected in this Board's decision
of March 17, 2009.

On Decenber 4, 2009, Mr. Agoro sought reconsideration of the Board's
November 2009 decision. On December 18, 2009, The Board denied Mr.
Agoro's motion, asserting that Mr. Agoro's arguments relating to his "Failure
To Appear" were previously rejected in the Board's March 17, 2009 decision.

Mr. Agoro timely petitioned for review to the United States Court of Appeals for

The Second Circuit of that decision Docket NO: 10-360. On July 30, 2010 The

Board denied Agoro motion to reopen seeking to apply for Asylum, and related

Relief's based on changed circumstances arising in the Country of Nationality.

     The Board also noted that Agoro had not submitted an Asylum

Application, which is required in support of a motion to reopen pursuant to 8

C.F.R. Section 1003.2 (C) (1), Also The Board concluded that it would decline

To revisit Agoro's challenge to his underlining removal order, and would

Decline to revisit his Ineffective Assistance of Counsel claim as well, stating

Further that Agoro had not complied with matter of Lozada 19 1 & N. Dec.

637 (BIA 1988).

     THE ABOVE ASSERTIONS ARE INCORRECT, The Petitioner argue that he

Has complied with the requirement set in matter of **Lozada,** 19 1 & Dec. 637

BIA, Aff'd 837 F. 2d 10 (1st Cir. 1988). This contrary to the Board assertion

In its decision of July 30th 2010, However, thus the legitimacy of this

Contradiction is plain in the face of the [**CERTIFIED ADMINISTRATIVE**

**RECORDS**].    And also the Petitioner argued that he has submitted the

Application for asylum FORM I-589 on his eligibility for asylum and related relief to

The Board together with various EXHIBITS to Ms. Kimberly Jackson and this

Submissions were confirmed.

## LEGAL STANDARDS

This Court has Jurisdiction over the Petitioner's claim, because his claim
Is a question law and due process over which this Court review de novo, the
General Habeas Petition statutes provides that the Federal Courts have the
Authority to grant a Writ of Habeas Corpus to a person held "in violation of the
Constitution Of Laws and Treaties of the United States, 28 U.S.C. Sections 2241
(C)(3). The Petitioner Habeas Petition challenged the unlawful detention of ICE/DHS
The grounds for this Petition are as follows.

# ARGUMENT 1

### "WHETHER PETITIONER IS ENTITLE TO BOND HEARING OR WHETHER HIS DETENTION IS JUSTIFIED?

**1.** Petitioner respectfully submits this motion in response to the respondent
Motion to dismiss the petitioner's habeas corpus petitions Pursuant to 28 U.S.C.
Section 2241 (a). For the reasons provided below, the respondent fails to
Demonstrate that the petitioner's motion should be denied, as such respondent
Motion to dismiss should be denied.

## **MEMORANDUM OF LAW**

The memorandum of law is submitted in support of petitioner's petition Pursuant To 28 U.S.C. Section 2241 (a) as to his unlawful detention, Whether Petitioner is Entitle to bond hearing or whether his detention is justified.

Petitioner respectfully submits the motion without conceding the accuracy of The false alleged in the respondent answers and returns submission or the Legal arguments it advances. And while reserving the rights the Petitioner's may Have to argue that the respondent is Evasive, Inconsistent, and Contradictory, Because respondent failed to answer the substance of the Petitioner's arguments of ''BOND REDETERMINATION'' the respondent did not acknowledge or even failed to Mention ''Whether the Petitioner is entitle to bond hearing or Whether his detention Is justified.

As the Court is aware, Mr. Agoro previously filed a Habeas Corpus Petition Challenging his detention by Immigration Authorities while detained in the Southern District of New York and Western District of New York, in this regard the Respondent in the Southern District of New York argued that the Petitioner is entitled to bond hearing determination.

The special assistant attorney representing the Government for the Habeas Corpus Petition has concluded in its [''BRIEF''] That '[''AGORO''] is now being Detained beyond the 90-Day removal period pursuant to 8 U.S.C. Section 1236 (a) (6). He is no longer subject to mandatory detention, but eligible for ''AN

INDIVIDUALIZED DETERMINATION" OF HIS ELIGIBILITY FOR RELEASE AS

REQUIRED BY 8 C.F.R. SECTIONS 241.4. It also concludes that "As of today, the

90-Day removal period and six months presumptively reasonable post-removal-

period detention authorized by "ZADVYDAS" both has ended under either the

Government's or Agoro's calculation. However, the petitioner respectfully requests

From the Honorable Judge to order the respondent to move for a more definite

Statement under Federal Rule Of Civil Procedure. 12 (e). Otherwise, The petitioner

Believes that the respondent neither directly admits the petitioner allegations nor

Denies the pleadings and considered a failure to Answer FRCP. 12 (e).

The respondent argument is Completely Unsupported when it claims that the

Nigeria Government issued two travel documents, the record does not support this

argument. See: Page 13 Memorandum of Law in opposition to the Petition Vaccaro

Declaration at 31. "On March 10, 2009, A travel document was issued for Agoro.

The Consulate Inadvertently failed to send the travel document to DHS before the

Document expired; therefore DHS requested that another travel document be

Issued for Agoro. [Because of this Assertion]. No travel document has been issued

To DHS. Now, it is questionable that, "When did Nigeria Consulate issued two travel

Documents for Agoro when the records did not show in "Decision to continue

detention".

See: **"DECISION TO CONTINUE DETENTION" DATED APRIL 30 2009.**

The Ice is currently working with the Consulate of Nigeria in an effort to obtain a

Travel document. A travel document is expected within the reasonable foreseeable

future. PAGE 54/55 Dated and signed April 30, 2009 by Osca A. Acosta.[deportation

officer] at 1636 Hour. The Petitioner Agoro is now having the first hand knowledge

12

Of the the Inherently Inconsistent Action of the respondent, the respondent assert

That Nigeria Consulate issued travel document for Agoro twice, first travel

Document was issued March 10, 2009, and second travel document was issued on

August 5, 2009.

The respondent asserts that, the travel document that was issued on March 10

2009, The Consulate inadvertently failed to send the travel document to DHS before

The travel document expired; therefore DHS requested that another travel

Document is issued for Agoro.

The respondent also assert that "although On August 5, 2009, ICE received

Another travel document for Agoro from Nigeria Consulate, ICE was still unable to

Remove him due to the court's July 23, 2009 stay order. It is questionable?

"Why would ICE assert on its "Decision to continue detention on August 10, 2009 if

It is truly infact that ICE has received the travel document on August 5, 2009.

See: Also Page 52-53 "Decision to Continue Detention" Dated August 10, 2009

Signed by Cheryl L. Crosslaw and served by Terry L. Robert Deportation Officer on

August 14, 2009. "Ice is currently working with the Embassy of Nigeria to obtain a

Travel document to effect your removal from the United States. Ice expects that

Travel documents will be issued for you and that your removal will occur in the

Reasonable foreseeable future. Therefore, you are to remain in ICE Custody at this

time. Pursuant to section 241 (a)(1)(c) of the Immigration and Nationality Act

(INA) you are required to make timely and good faith efforts to obtain travel

Document or other documents necessary for your removal from the United States.

If the travel document is issued March 10, 2009, and continued detention is dated

April 30 2009, as the respondent assert that travel document was to expire after

Sixty days. Between March 10, 2009, and April 30 2009 is 51 Days. The travel Document cannot and will not expired in 51 Days when Agoro received "Decision to Continue Detention" in April 10 2009, because it is only 51 days not sixty days.

Even, if infact ICE has received travel document on August 5, 2009 asserted By the respondent ["that although on August 5 2009 ICE received another travel Document for Agoro from Nigeria Consulate.

But another "Decision to Continued Detention" was issued to Agoro on August 10, 2009 seeking for another travel document signed by Cheryl L. Crosslaw and served By Terry L. Robert ["Deportation Officer"] Asserted ["That ICE is currently working With the Embassy of Nigeria"]. to obtain a travel document to effect your removal From the United States.

Now, between August 5, 2009, that ICE received a travel document, ICE Issued Agoro another "Decision to Continue Detention" on August 10, 2009, that Is A-Five-Day-Difference of receiving one travel document? ICE asserted in its "Decision to Continue Detention". On August 10, 2009 as noted above that ["ICE Is currently working with Embassy of Nigeria to obtain a travel document to effect Your removal from the United States, this is [ABSOLUTELY CONTRADICTORY"], Because if Ice has received a travel document on August 5, 2009, Why would ICE Request for another travel document within 5-Day time frame of receiving one Travel document on August 5, 2009. See: "Decision to Continue Detention on August 10, 2009.

The respondent in Western District of New York assert that the Consulate Inadvertently failed to send the travel document to DHS before the document expired. Meaning "IT WAS NEVER RECEIVED".

14

The respondent in Southern District of New York assert that the travel Document was to expire after sixty days. ICE did not remove Agoro while travel Document was in effect meaning "IT WAS RECEIVED". This is Inherently Conflicting And Inconsistent between the two Assistant U.S. Attorneys hereinafter respondent Or the Government.

## "DECISION TO CONTINUE DETENTION" DATED 1, 12 2010 SIGNED BY KENNETH C. SMITH.

"Twice Prior, The Consulate of Nigeria in New York, New York has issued a travel Documents to effect your removal and ice has received assurances from the Government of Nigeria that they will re-issue a travel document upon the Completion of your pending Habeas in the United States District Court for the Southern District of New York. There is no reason to believe at this time that your Removal will not take place within the reasonably foreseeable future".

["THIS ASSERTION IS FALSE"] Because it is "COMPLETELY UNSUPPORTED by

(1). DECISION TO CONTINUE DETENTION.

(2). WARNING FOR FAILURE TO DEPART.

The respondent's claim that is in receipt of travel document on two occassions, Without presenting the travel document to the court as exhibits, however, if this is true, it is respectfully requested that the court order the respondent, and Consulate

15

General of Nigeria to appear in court to prove the authenticity of the travel documents, because the Nigeria Consulate has not, and will not, issue the travel Document on diplomatic grounds.

See the declaration of Mr. Gerald Smith, Assistant Field Office Director Department of Homeland Security U.S. ICE declaration at ["15"]. In March 2009 ICE received travel document for Agoro. And Agoro now respectfully requests the ICE to produce a copy of the travel document to substantiate its claim, the travel document that the respondent claimed to have received from Nigeria Consulate in March 2009 should be presented to the court for a hearing in camera.

There is nowhere in the record that the travel documents has been issued,

The Nigeria Consulate did not issue travel document to the DHS or ICE.
See: Also respondent's Memorandum of law, the respondent claims Agoro
Has received full consideration of these regulatory factors and per regulation his
Custody review was reviewed by two-member panel in April 2009, August 2009,
January 2010, and October 2010, See respondent declaration, this is not true it is
false. To date Mr. Agoro has received no hearing before any member panel as to
Whether his prolonged detention is justified, instead, the only process he has
Received consists of a number of ["PERFUNCTORY"] administrative custody reviews
That on information and belief, deemed him a flight risk based on his convictions
alone. Moreover, because, ICE maintains that Mr. Agoro is subject to mandatory
Detention he will receive no hearing over his imprisonment during the pendency of
His deportation case despite the fact 36 months of his detention is due to the errors
Of law by the Immigration Judge and the Ineffective Assistance of Counsel. (36)
Months, (30) months longer than the presumptively reasonable Six-month period

Identified by the Supreme Court in ZADVYDAS V. DAVIS 533 U.S. 678, 121 S.Ct.
2491, 150 L. Ed. 2d 653 (2001).

Agoro has never received the required 180-Days review under 8 C.F.R. Section
241.4 (C)(2) No review panel existed, and no personal interview took place. Thus,
DHS/ICE did not follow its own procedures and regulations, as such Agoro must be
Released because of DHS/ICE failure to follow its own regulations.

**See EXHIBIT "A".** Indictment for Credit card fraud and Indictment for Failure To
Appear. Mr.Agoro has moved to vacate his conviction for failure to appear which
Is pending in the United States Court Of Appeals for the First Circuit.

[Post Conviction Relief"] Pursuant to 28 U.S.C. Section 1651 [a], This Failure to
Appear is the only Agoro conviction under the ["INA"] which was incorrectly
Alleged by the ["INS"] as aggravated felony under the immigration law, then this
"Failure to Appear" conviction is the only basis upon which ICE alleged Agoro can
Be deported and if this "Failure to Appear is vacated, this deportation proceedings
Will be abandoned, as there is no other basis upon which Agoro could lawfully be
Deported because the credit card fraud and the failure to appear is the only Agoro
convictions.

On October 18 2010 A request were made for "BOND REDETERMINATION" to
All the DHS/ICE officials was denied, the respondent did not include its decision in
The records **EXHIBIT "A-1"**

On November 1 2010 Petitioner made another request on "BOND HEARING
FOR INDIVIDUALIZED DETERMINATION" to the District director, Facility director, Mr
S. Callagher, ICE office of detention and removal, Deportation officer Mr. James
Tracy, Head of Deportation Officer, Ms. Miller Jones.

On the same day Petitioner made the request to the DHS/ICE officials on Individual bases, and combined application of request to these officials, and Astonishingly enough to this day none of these officials responds to the petitioner's request. See: Attached **EXHIBIT "B-1"** RE-BOND HEARING FOR "INDIVIDUALIZED DETERMINATION".

See: Pursuant to 8 U.S.C. 1253 (h) the statute read in pertinent part. The Attorney General shall not deport or return any alien.... To a Country if the Attorney General determines that such alien's life or freedom would be threatened In such a Country on account of Race, religion, Nationality, Membership in a Particular Social Group, or Political Opinion. The Petitioner Agoro is in danger of Religious Persecution as an ["APOSTATE"] and because ["APOSTASY"] is a capital Crime throughout ["ISLAMIC WORLD"]. Petitioner Agoro has a well-founded fear That should he be removed to Nigeria, he will be persecuted for his Christian beliefs. Particularly, because as a converted Muslim, he will be viewed as a "TRAITOR TO ISLAM" AND " AN ENEMY OF THE FAITH", subsequently, He will seek Out by "MUSLIM MILITANTS" who will see him as a "DIRECT THREAT" to there Religious Beliefs. Agoro fear persecution and cannot return to his Country because Of the Death penalty alone on the book for Islam convert and a "Founding Pastor" Who Convert from Islam to Christianity, As such, there is no reasonable foreseeable Future for Agoro return to his Country.

See: Attached **EXHIBIT "C"** On "RELIGIOUS PERSECUTIONS" for PASTORS AND RELIGIOUS CONVERT FROM ISLAM TO CHRISTIANITY.

See the case of: D'ALESSANDRO v. MUKASEY 628 F. Supp. 2d 368, 2009 U.S. DIST LEXIS 87056 (WDNY 2009). To establish More facts about Government

18

Unlawful Detention practices. In this case, This Court Ordered and recommend D'alessandro petition be granted and that a writ of Habeas Corpus issued directing his immediate release from custody subject to appropriate Conditions of supervision by DHS/ICE.

It is also to be noted that Petitioner's petition Pursuant to 1651 (A) Writ of Error Coram Nobis is pending in the United States Court os Appeals for the First Circuit.

Petitioner has been held in custody of U.S. Immigration and Custom Enforcement (ICE) since January 16th 2009, and for more than 36 months and has received One Custody hearing on June 24th 2011 To Determine if his prolonged detention is justified.

In Zadvydas v. Davis, the Supreme Court held that due process concerns with Respect to indefinite detention required it to construe the statutory provision Regarding detention of non-citizens with a final order of removal as not allowing Detention beyond six months if there is "No significant likelihood of removal in the Reasonably foreseeable future, 533 U.S. 678, 701 (2001). Similarly, in Demore v. Kim, the Supreme Court upheld mandatory detention of non-citizens who had Conceded removability and whose removal proceedings are still pending under 8 U.S.C. Section 1226 (c), but only for the "brief period necessary" to complete those proceedings. 538 U.S. 510, 513 (2003)(Emphasis Added).

Since Demore, the Circuit Courts to address the issue have held that The prolonged incarceration of non-citizens pending their removal proceedings is not authorized, or at least not authorized in the absence of a constitutionally adequate hearing to determine if such prolonged detention is justified pending

removal proceedings. See Casas-Castrillon v. Dep't of Homeland Security 535 F. 3d 942, 950 (9th Cir. 2008); Tijani v. Willis, 430 F. 3d 1241 (9th Cir. 2005); Ly v. Hansen, 351 F. 3d 263 (6th Cir. 2003). Moreover, numerous judges in this District have reached Similar conclusions. See: D'alessandro v. Mukasey 628 F. Supp. 2d 368, 2009 Dist Lexis 87056 (WDNY. 2009). See:Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. pa. 2007); Nunez v. U.S. Dep't of Homeland Security, No. 07- 1915, 2008 WL 25 93806 (M.D. Pa June 27, 2008); Wilkis v. U.S. Dep't of Homeland Security, No: 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Victor v. Mukasey, No: 08-1914, 2008 WL 506 1810 (M.D. Pa Nov. 25 2008).

## DHS/ICE's FAILURE TO COMPLY WITH THEIR OWN REGULATIONS AND FAILURE TO PROVIDE LEGALLY REQUIRED PROCEDURES VIOLATE PETITIONER'S RIGHT TO PROCEDURAL DUE PROCESS.

The question as to whether Petitioner's detention is in violation of the laws of The United States is one for a Federal Habeas Court to hear, 28 U.S.C. Section 2241. Accordingly, the Petitioner files the Habeas Corpus Petition, Pursuant to 28 U.S.C. Section 2241, requesting that the Court order a hearing on whether the Petitioner should remain detained and whether such detention is justified for over 36 months of detention.

Petitioner clearly has a non-frivolous claim, as set-forth in the Petition for Writ Of Habeas Corpus, numerous Courts have granted relief in similar circumstances, Following Zadvydas, and with guidance from various other Federal Court decisions, Prolong detention without a meaningful hearing to determine if such prolonged Detention is justified is unreasonable. It is clear from all these factors and evidence That petitioner has a strong reason to believe that a travel document has not been Issued and there is no reasonable foreseeable future for his removal and it is clear That petitioner's detention is not in accordance with the law and ZADVYDAS fully Applies to the petitioner.

The respondent argued that Agoro petition for review in the United States Court Of Appeals for the Second Circuit justify his continued detention simply because the Appeals have a practical effect on his actual deportation. It should be noted that Agoro only sought to prevent his deportation from this Country while he challenged His underlying conviction and the BIA'S denial of his motion to reopen his Deportation proceedings. Agoro's efforts to reopen his deportation proceedings was Not a request to remain incarcerated.

## RESPONDENT'S ARGUMENT LACK OF SETTLED LAW REGARDING DETENTION OF ALIENS UNDER FINAL ORDER OF REMOVAL WHILE TRAVEL DOCUMENT IS NOT AVAILABLE BUT SECOND CIRCUIT'S ''FOREBEARANCE POLICY PREVENTS REMOVAL

Respondent argues that of the analysis and theory that was rejected in several

Courts by relying on cases which has already found to be unpersuasive and not on

point with the present matter. In fact, the Court specifically discussed and rejected

Lawrence, Evangelista, Archibald, Marcelus and Copes in its report. However, with

regard to the case cited by respondents, GUANG and AKINWALE there also were

Court-ordered stays in place but petitioner Babatunde Kareem Agoro does not have

a stay order and was penalized for pursuing avenues of relief to which he was

legally entitled, and thus continued detention was the petitioner's own fault.

> See the conclusion of Honorable Judge Victor E. Bianchini:
> I do not find these cases factually apposite; nor are
> They binding precedent this Court. Rather; the Court
> Find persuasive the reasoning of two cases cited by
> Petitioner Ly v. Hansen, 351 F. 3d 263, 272 (6th Cir. 2003),
> And Oyedeji v. Ashcroft, 332 F. Supp. 2d 747 (M.D. Pa 2004).

As noted above, there is no formal stay in place, but, even if the Second Circuit ultimately

were to enter a formal stay, respondents should not be able to rely on this fact to keep the

petitioner for [''36''] Months because appeals and petitions for relief are to be expected as a

natural part of the process. An alien who would not normally be subject to indefinite detention

cannot be so detained merely because he seeks to explore avenues of relief that the law makes

available to him. Further, although an alien may be responsible for seeking relief, he is not

responsible for the amount of time that such determinations may take. The mere fact that alien

has sought relief from deportation does not authorize the INS to drag its heels indefinitely in

making a decision. The entire process not merely the original deportation hearing is subject to

the constitutional requirement of reasonability,'')(Quoted in Oyedeji 332 F. Supp. 2d 754). With

22

the regard to the district Court decision in Copes, Lawrence, and Guner, respondents here have failed to provide pinpoint citations or any parenthetical explanations for them. The reasons for respondents reliance upon these decisions, let alone whether they are apposite to this case is not clear from the face of respondents opposition brief after reviewing the case, the Court does not find them to be binding or persuasive authority. However, the respondent argument citing GUANG, AND AKINWANLE, [''IS MISPLACED'']. Because, these two petitioner's has Stay order, and Agoro does not have a stay order.

It is to be noted that Mr. Agoro has made several efforts to secure the travel documents from His Consulate in which. The Consulate refuses to issue the travel document on diplomatic Grounds, therefore, his removal was unlikely.

The respondent claims of continued detention appear to be incorrect, because, the respondent claim that Agoro has received consideration of the regulatory factors and was provided the process which he was entitled [''THIS IS INCORRECT''] Agoro has not received any consideration of the regulatory factors, the only process Agoro has received was the [''Grudging and Perfunctory administrative Custody reviews that on information and belief, deemed him a flight risk based on his convictions alone. Moreover, because, ICE/DHS maintains that Mr. Agoro is subject to mandatory detention he will receive no hearing over his imprisonment during the pendency of his deportation case of [''36''] Months.

It is also to be noted that (36) months of Agoro Incarceration, Agoro has Received only (3) detention decisions which were titled "Decision To Continue Detention, the first was in April 30th 2009 signed and served by Osca A. Acosta [Deportation Officer] at 1636 Hour. The Second "Decision to Continued Detention was August 10th 2009 signed by Cheryl L. Crosslaw and

Served by Terry L. Robert [Deportation Officer]. Served on August 14th 2009. The Third "Decision To continued Detention" was January 12 2010, and to my surprised another "Decision To Continued Detention" was in the respondent memorandum and returns which was never given to the Petitioner Agoro.

Under the regulations, the "Decision To Continue Detention Custody not made By an authorized person under the regulations because after 180-Days, The Authority to make custody determinations is vested in the ["EAS"] Executive Associate Commissioner. See 8 C.F.R. Sections 241.4 (c)(2). (For.... Any alien who Has not been released or removed by the expiration of the Three-month period After the review, the Executive will make all further custody determinations Associate Commissioner, acting through the HQPDU"); 8 C.F.R. Section 241.4 (c)(1)("The Initial Custody Determination concluded in the 3 months period Immediately following the expiration of the 90-Day-removal-period, subject to the Provisions of paragraph (c)(2) of this section, will be made by the district director Or the director of the detention and removal field office having jurisdiction over the Alien")(Emphasis Added); 8 C.F.R. Section 241.4 (d)(ii).

The Supreme Court has made clear in Zadvydas that Government Detention Violates due process clause unless detention is ordered in criminal proceeding with Adequate procedural protections, or there is special justification, such as harm Threatening mental illness, which outweigh the individual's constitutionally protected Interest in avoiding physical restraint, Zadvydas, 533 U.S. at 699-700.

In Zadvydas, the regulations governing post-removal-order detention of aliens Were amended to comply with due process concerns illuminated in Zadvydas. The Amended regulations, 8 C.F.R. Section 241.4 and 8 C.F.R. Section 241.13 were

Drafted "to reflect the concerns of the Zadvydas court and provide necessary Procedural safeguards to ensure the detention of an alien beyond the removal-Period comports with due process requirements because these regulations confer Important rights upon aliens ordered removed. Thus the DHS/ICE is bound by these regulations. "Bonito, 547 F. Supp. 2d at 757, as the district court pointed out in Bonito. The Immigration regulations involved here do not merely facilitate internal Agency housekeeping but rather afford important and imperative procedural Safeguards to detainees "Id. (Citing United States v. Caceras, 440 U.S. 741, 759, 760, 99 S. Ct. 1465, 59 L.Ed. 2d 733 (1979)("This Court has consistently Demanded Governmental compliance with regulations designed to safeguard Individual interests even when the rules were not mandated by the Constitution or Federal Statute")(Citing Inter alia, United States v. Ex Rel. Accardi v. Shaughnessy, 347 U.S. 260, 267, 74 S. Ct. 499. 98 L. Ed. 681 (1967).

In Zadvydas Supreme Court held after the (6) months-period detainees need Only provide ["Good Reasons To Believe"] that removal is not significantly likely in The reasonably foreseeable future. ["Zadvydas, 533 U.S. at 701"]. Thus, However, Agoro respectfully request this Court to conduct an expedited hearing on the Legality of Agoro unjustified detention of (36) months, (30) months longer than the Presumptively reasonable six-month period identified by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678. 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

Mr. Agoro detention has lasted (36) months. the first six months are considered "Presumptively reasonable" under Zadvydas, the last (30) months are not. See Id. The post-removal period confinement has thus been (Six times) plus one month More than of what is considered presumptively reasonable. In cases such as this,

Zadvydas instructs that what counts as the reasonably foreseeable future
Accordingly diminishes; in effect, it becomes closer in time. Given the protracted
Detention thus far. Zadvydas held that the statute authorizing post-removal-order
detention, ''read in light of the Constitution's demands,'' limits an alien's post-
Removal-period detention to a period reasonably necessary to bring about that
Alien's removal from the United States. 533 U.S. at 689. The Supreme Court
Recognized that a period of six months was a presumptively reasonable period of
detention, after which the alien was entitled to be heard on whether release should
Be ordered. Id. at 701.

As noted before, the respondent continued arguing every bit as vigorously that
Agoro case is not subject to Zadvydas, later stating that Consulate General of
Nigeria has issued travel documents twice without presenting the travel documents
In its exhibits. The respondent must not be allowed to rely upon Mr. Agoro's timely
And thoughtful adherence to the rulings of the United States Supreme Court in the
Case of Zadvydas as a reason to deprive Mr. Agoro of the very sort of relief which
Was contemplated by the Zadvydas itself. Notably Mr. Agoro clearly relies heavily
on the case of Zadvydas which held precisely that [''SIX MONTHS''] is
Presumptively reasonable. ''Id., 121 S. Ct. at 2505.

The petitioner has exhausted all administrative remedies and does not have an
adequate remedy at law unless the said writ issues on injustice and prejudice, which
would be inherent.

**IS IT REASONABLE FOR THE DHS/ICE TO CONTINUE DETENTION OF PETITIONER BASED ON OVER TWO DECADES OLD CONVICTION OF CREDIT CARD FRAUD OF $1696 ["ONE THOUSAND SIX HUNDRED AND NINETY SIX DOLLAR"] THAT MAY WELL NOT PROVIDE LEGAL GROUNDS FOR REMOVAL FROM THIS COUNTRY ?**
**SUGGESTED ANSWER: ["NO"]**

**SEE EXHIBIT ["B"] INDICTMENT FOR CREDIT CARD FRAUD.**
**SEE EXHIBIT ["C"] DECISION TO CONTINUE DETENTION.**

DHS/ICE failure to comply with their own regulations and failure to provide legally-required procedures violate petitioner's right to procedural due process. The petitioner has received insufficient process to protect his fifth amendment liberty interest, because if we have construe the statute as permitting indefinite detention, additional process would be required. Zadvydas, 533 U.S. at 692.

The petitioner Agoro was denied release and continue detention based on no more than a reading of his file that lasted over Two decades old conviction of credit card fraud conviction as justification to confine him **["EXHIBIT "B"]**, However, due process is not satisfied by rubbe-stamp denials based on temporally distant offenses. The process due even to deportable and excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight . And it should be noted that the DHS/ICE'S presume dangerousness to the community and risk of flight based solely on the petitioner's past record does not satisfy due process.

In the DHS/ICE decisions to continue detention dated October 12th 2011, the respondent based its decision to continue detention on Agoro over two decades old conviction and this decision to continue detention have neither been in accordance either with the due process Requirements as interpreted by Zadvydas, nor in compliance with DHS own regulations. See the three sections of Immigrations relating to the removal of the aliens are applicable in 8 C.F.R. Section 241.4, 8 C.F.R. Section 241.13 and 8 C.F.R. Section 241.14. The regulations

27

were either amended or promulgated in the first instance as a result of Zadvydas.

It is to be noted that the respondent actually failed to provide certain

[''STATUTORY MANDATED PROCEDURES''] to the petitioner Agoro. See 8 C.F.R. 241.4,

DHS/ICE has authority to release any detainee if determines that this release will not pose a

danger to the community or to the safety of other persons or to property or a significant risk of

flight pending such aliens removal from the United States. ''8 U.S.C. Section 241.14 [d][1]

Where as here, a detainee is detained beyond the 90-day- removal-period. ''The Deputy

Executive Associate Commissioner for Detention and Removal, The Director of the Detention

And Removal Field Office or the District Director may continue an alien in custody beyond the

Removal period described in Section 241 [a][1] of the act. [8 U.S.C. Section1231 [a] pursuant to

The procedures described in this Section [8 C.F.R. Section 241.4] ''8 C.F.R. Section 241 [a] ....

After the 90-day-Removal-Period elapses, and if the detainee has not been removed, within the

next three [3] Months, there must be a review and custody determination by the Executive

Associate Commissioner [''EAS''] acting through the Headquarters Post-Order-Detention Unit

[''HQPDU'']. See 8 C.F.R. Secction 241.4 [c][2] [For Any Alien the District Director refers for

further review after the removal period, or any alien who has not been released or removed by

the expiration of the Three-Months-Period after the review, all further custody determinations

will be made by the Executive Associate Commissioner acting through the [''HQPDU'']. This

180-Day review by the [''EAS''] must comply occur in accordance with the follow procedures;

Determinations by the Executive Associates Commissioner: ''Determinations by the Executive

Associates Commissioner to release or retain Custody of the Aliens shall be developed in

Accordance with the following procedures. 8 C.F.R. Section 241.4

    The DHS/ICE has violated and continued to violate the petitioner, because the petitioner

Has being detained for more than Three Years/ 36 Months, and DHS/ICE did not follow its own

Regulations [''A written notice shall be given to each alien at least [''30 days''] prior to the date

Of review, the notice shall specify the factors to be considered and explain that the alien will be

Provided the opportunity to demonstrate by clear and convincing evidence that he is not a threat

To the community and is likely to comply with the removal. See 8 C.F.R. Section 241.4 The

Alien must also be advised that he may be represented by an Attorney, or other person at no

Expense to the Government, if an interview has been scheduled, the alien's representative may

Attend the review at the scheduled time.

The petitioner was given this interview after [''30 Months''] of detention and a Notice of

[''24 Hours''] was given without any chance or opportunity to contact an Attorney for this

representation.

The petitioner claims that the [''CUSTODY REVIEW PERFORMED''] by DHS/ICE during

the Habeas Litigation were [''GROSSLY DEFECTIVE''] in constitutional terms'', because due

process clause prohibits arbitrary deprivations of liberty, A lawful permanent resident such as

Agoro could be entitled to an Individualizes Determinations as to his risk of flight and

Dangerousness if the continued detention became unreasonable or unjustified. Id. at 532.

The decision to continue detention dated October12th 2011 states that the petitioner's final

Order of removal became final on September 27th 2007 without considering the fact that the

Petitioner has case pending in the United States Court of Appeals for the Second Circuit which is

A natural part of the process. An Alien who would not normally be subject to indefinite

detention cannot be so detained merely because he seeks to explore avenues of relief that the law

Makes available to him. Further, although an alien may be responsible for seeking relief, he is

Not responsible for the amount of time that such determinations may take. The mere fact an alien

Has sought relief from deportation does not authorize the INS to drag its heel indefinitely in

Making a decision. The entire process, not merely the original deportation hearing is subject to

The constitutional requirement of reasonability. Id at 272. See D'alessandro v. Mukasey 628 F.

Supp. 2d 368, 2009 WL 799958, at 12 WDNY 2009 Agreeing that ''An alien should not be

Effectively punished for pursuing applicable legal remedies''. Aff'd 2009 WL. 931164 WDNY

April 2 2009. See Ly, The Court of Appeals for the Sixth Circuit also considered the relationship

Between the alien's incarceration of the criminal charges rendering him removable and the

Period of time in which the alien was detained during removal proceedings. Id. at 271.

Petitioner served criminal sentences for his two convictions of a total of 12 Months he spent

Considerably more time than in INS custody awaiting determinations of removal.'']. Finally, the

Court of Appeals was conscious of the fact, that Ly would not be removed upon conclusion of

The proceedings because his Native Country did not have a repatriation treaty with the United

States. Id. at 270.

The Petitioner Agoro has spent more than [''36 Months''] in Immigration Detention,

which exceeds his Incarceration for the underlying criminal conviction for his credit card

fraud/failure to appear. Moreover, If Agoro is successful on his appeal currently pending before

the Court of Appeals for the Second Circuit, i.e. it is determined that a conviction for failure to

appear does not constitute an aggravated felony and also if Agoro is successful on his motion to

vacate his conviction in the Court. It should be noted that All these process will include

additional detention, because all these appeals process is lengthy, as such, the petitioner Agoro

claims that the custody reviews performed by DHS/ICE during the Habeas litigation were

[''GROSSLY DEFECTIVE''] in Constitutional terms  See D'alessandro's 2010 U.S. Dist

LEXIS 31229 WDNY March 31 2010, This Court held that DHS'S conclusion that D'alessandro

is a flight risk or danger to community is [''PATENTLY UNREASONABLE''] and recommend

Finding that the DHS/ICE'S review of D'alessandro custody has been [''GROSSLY

DEFECTIVE''] in constitutional terms and that its decisions to continue detention have neither

Been in accordance either with due process requirements as interpreted by Zadvydas v. Davis

Nor in compliance with DHS/ICE'S own regulations and this Court recommend that the

Petitioner be granted unconditionally, and D'alessandro released immediately pursuant to

Reasonable conditions of supervision and bond, as determined by DHS, subject to review and

Oversight by the district court. D'alessandro v. Mukasey, 628 F. Supp. At 406.

The petitioner Agoro argues that the Custody Reviews performed by DHS/ICE during the

Habeas litigation were [''GROSSLY DEFECTIVE''] in constitutional terms and detention after

Six Months based on special danger requires the additional due process protections of 8 C.F.R.

Section 241.14, none of which occurred during the Custody reviews. Id.

It should be noted that deportation to a Country of deportability would be at risk violated the

substantive component of the fifth amendment due process clause, because if deported, the

United States would knowingly expose Agoro to a substantial risk of death or serious bodily

harm, because of Agoro conversion from Muslim to Christian an act called [''APOSTASY''].

It can be anticipated that long term lawful permanent residents are likely to pursue challenges to

removal orders that result in lengthy proceedings. See Demore, 538 U.S. at 567-68 [''Souter J.'']

desenting, [''Lawful permanent residents ''are the aliens most likely to press substantial

challenges to removability requiring lengthy proceedings'']. It would seem that the statutes of

lawful permanent resident should warrant heightened scrutiny of a decision to detain such an

alien while he or she pursues non-frivolous challenges to removal in Federal Court. Id. at 545-56

[''Souter J. Dissenting'']. [''The notions of fairness whose roots may have become, as they are

In the present case, deeply fixed in this land.''].

See the decision to continue detention dated October 12th 2011, neither the recommendation to continue detention by the DHS/ICE states any factual grounds or bases for the decision, but merely informing Agoro that it has been determined that you will not be released from custody of ICE because the DHS/ICE believes that if Agoro is released, he will pose a danger to society, and because of over two decades old convictions, but it took DHS/ICE over [''30 Months''] to conduct the review. The DHS/ICE recommended continue detention without pointing to any evidence of a risk of flight or danger to the community, other than Agoro twenty-two years old conviction of credit card conviction, ''But Again cites no evidence to substantiate these assertions, but DHS/ICE continued to cite to the petitioner's now more than two decades old convictions as justification to confine Agoro. However, the petitioner has not yet received the rigorous of his eligibility for release that due process requires, Moreover, the fact that the alien has a criminal history does not create a presumption in favor of continue detention.

If there will be a removal hearing, Agoro would ''Absolutely'' appear for those proceedings and that he would comply with any other conditions of release including reporting requirements since the DHS/ICE had failed to produce anything like enough evidence to justify detaining the petitioner Agoro, as such the petitioner respectfully request the court to release Agoro immediately pursuant to reasonable conditions of supervision/bond as determined by the DHS, subject to review and oversight by this court.

Agoro has been detained for over [''36 Months''] and his deportation is unlikely for the reasonably foreseeable future because Nigeria Consulate refused to issue travel document to Agoro on diplomatic grounds.

The petitioner Agoro deportation was ''No longer practically attainable such that the petitioner

Detention did not serve its purported immigration purpose.

See Bonittos, The Court found that by failing to afford the required 180-Day review, DHS has failed to provide petitioner with the procedural safeguards contained in the regulations implementing the post-removal-order detentions statute. DHS cannot constitutionally detain Bonitto without complying with these safeguards, regardless that Bonitto [''had''] not here meet his burden under Zadvydas, ''Id. at 758 thus, the Magistrate Judge recommended affording DHS a period of time within which to provide petitioner's meaningful post-removal custody review as contemplated in 8 C.F.R. 241.4 and 241.13 and recommended that such process were not provided, petitioner released unless his removal has been effectuated by that time,'' Id. See D'alessandro, this Court held that, [''In addition to failing to provide D'alessandro with certain procedures guaranteed by the regulations, e.g. 180-day review, DHS/ICE'S custody decision contain [''GLARING DEFICIENCIES''] with regard to consideration of the required release factors.

Mr. Agoro is not a violent person, 8 C.F.R. Section 241 [C][2], but it is apparent that DHS/ICE has simply taken Agoro over two decades old conviction and concluded that his detention should be continued. Where as here, detention becomes prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable. ''Oyedeji 332 F. Supp. 2d at 754 [''Quoting Ngo v. INS 192 F. 3d 390, 398 (3rd Cir. 1999) and citing Zadvydas, 533 U. S. at 690 [''stating that'] ''Government detention violates the [''Due Process Clause''] unless the detention is ordered in a criminal proceedings with adequate procedural protections, or, in certain special and [''Narrow Non-Punitive Circumstances''] where a special justification such as [''Harm-Threatening, Mental Illness''], outweighs the [''Individual's Constitutionally protected interest in avoiding physical

restraint''] In this deportation and removal cases, the stakes are high and …. Grudging and Perfunctory review is not enough to satisfy the due process right to liberty …. ''Id. Quoting Ngo 192 F. 3d at 398'']. ''The assessment of flight and danger to the community must be made on a current bases,'' Id. ''Citing Ngo F. 3d 398, and to presume dangerousness to the community and risk of flight based on [''An Alien's''] past record does not satisfy due process,''Id. Thus the district court in Oyedeji held.

As was the case in Zadvydas, ''The proceedings at issue here are civil, not criminal, and this Court assume[s] that they are nonpunitive in purpose and effect. Id. In Zadvydas, Supreme Court proceeded from the assumption that, as here, the detention was not for punitive purposes. Respondent do not, and cannot attempt to argue here that the instant matter is criminal or that the detention may before the purpose of continuing to exact punitive or retributive measure against Agoro. In considering the constitutionality of Agoro's detention in this case it bears noting the Supreme Court's introductory comments from the seminal case of Zadvydas, 533 U.S. 678, 121 S.Ct. 2491, 150 L. Ed. 2d 653, regarding the limited tolerance our Nation's Constitution has for civil detention.

> A statute permitting indefinite detention of an alien would raise a serious
> Constitutional problem. The Fifth Amendment's Due Process Clause forbids
> The Government to depriv[e] any ''person …. Of …. Liberty …. Without due
> Process of law. ''Freedom from imprisonment-from Government custody
> Detention, or other forms of physical restraint lies at the heart of the liberty
> That Clause protects. See Foucha v. Lousiana, 504 U.S. 71, 80, 112 S. Ct. 1780,
> 118 L. Ed. 2d 437 (1992). And this Court has said that Government proceeding
> with adequate procedural protections, See United States v. Salermo, 481 U.S. 739
> 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). Or, in certain special and ''narrow''
> Nonpunitive circumstances, Foucha, [504 U.S.] at 80, 112 S. Ct. 1780, 118 L. Ed.
> 2d 437, where a special justification such as harm-threatening mental illness,
> outweighs the individual's constitutionally protected interest in avoiding physical
> restraint. Kansas v. Hendricks, 521 U.S. at 690 [''Stating that ''[t]here [wa]s no
> sufficiently strong special justification here for indefinite civil detention-at least
> as administered under th[e] statute''] [emphasis supplied].

34

In Zadvydas the rationales proffered by the Government for the civil detention, the Supreme Court found them not to be a sufficiently strong special justification here for indefinite civil detention-at least as administered under this statute. 533 U.S. at 691. The first regulatory goal of INA Section 241 [a] is to ''ensur[e] the appearance of aliens at future immigration proceedings'' And the second to [''prevent''] danger to the community.'' Id. [''Quotation to Omitted'']. However, The Supreme Court stated, ''by definition the first justification-preventing flight is week or non existent where removal seems a remote possibility at best. Id. [w]here detention's goal is no longer practically attainable, detention no longer bear[s][a] reasonable relation to the purpose for which the individual [was] committed. Id. [Quoting Jackson v. Indiana, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).

The decision to continue detention was based upon Agoro's prior record, of more than two decades old conviction, there is no specific mention or even allusion to the release consideration set forth in 8 C.F.R. Section 241.4 [e] or the factors for consideration set forth in 8 C.F.R. 241.4 [f]. There was nothing to reference to in the DHS/ICE decisions to continue detention apart from his credit card fraud, other than the credit card fraud conviction, the DHS/ICE have pointed to no evidence that would support a determination that Agoro is a danger to the community or such a flight risk that no conditions of supervision could assure his presence in the event that his appeals is unsuccessful. A consideration of the criteria for release listed in 8 C.F.R. Section 241.4 [e]. As noted above, the credit card fraud asserted by the DHS/ICE that forms the basis of decision to Continue detention hardly pose a threat to the community in terms of the factors for Consideration Of release set forth In Section 241.4 [f]. Agoro does not have any disciplinary Infractions or Incident reports while incarcerated or in DHS/ICE custody, Agoro convictions are Not for serious Offenses, there is no evidence of any mental problems or refusal to participate in

Work, Educational of vocational programs while incarcerated, as noted below Agoro wife is a

United States Citizen, and Agoro has five United States children and four United States grand

children, Besides Agoro has been in United States for more than [''32 YEARS''], never went

back to his Country because of the religious persecutions and there is no history of escapes. In

short, only a Criminal record that is now more than twenty two Years old supports a decision to

continue detention. ''Due process is not satisfied .... By rubber stamp denials based on

temporally distant offenses. Ngo, 192 F. 3d at 398. Thus, However, The DHS/ICE does not have

a factual basis or Explanation for the decision to continue detention amount in Agoro's case to a

perfunctory and Superficial pretense instead of a meaningful review sufficient to comport with

due process Standards Bonitto 547 F. Supp. 2d at 758.

It should be noted that Mr. Agoro would not violate the conditions of release 8 C.F.R. Section

241.4 [e][5]. In addition, as a practical matter, Agoro has nothing to gain by violating the

Conditions of his release because he has two avenues of legal recourse open to him which might

Allow him to stay in the United States, The United States Court of Appeals for the Second

Circuit Case is pending, and his Coram Nobis Petition is pending in the Court and this case is the

Only Basis upon which DHS/ICE erroneously believe to be a deportable offense and are trying

To Deport Agoro, Thus, should this failure to appear conviction is vacated, the deportation order

Will be nullified, In addition, Mr. Agoro has a favorable factors, including ties to the United

States Such as five United States Citizen children and four United States grand children, and a

United States citizen wife, In addition Mr. Agoro is the Founding Pastor and Minister in charge

Of the Prayer House of Deliverance Church in Brooklyn New York, as such, there is no

Likelihood that Mr. Agoro is a significant flight risk or may be abscond to avoid removal, and

furthermore, Agoro is not likely to engage in future criminal activity, or pose danger to the safety

Of him Or to other persons or property, besides the Nigeria Consulate has made a request

Seeking for his Release from detentions to DHS/ICE, See accompanying Exhibits.

See Bonitto 547 F. Supp. 2d at 758 perfunctory and superficial pretenses instead of a meaningful

Review sufficient to comport with due process standards, thus Agoro respectfully requests from

This court to recognize and hold the case of  D'alessandro v. Mukasey 628 F. Supp. 2d 214

(WDNY 2009), the case of Barrington Scarlett v. USDHS 632 F. Supp. 2d 214 (WDNY 2009)

and Zadvydas applies with equal force to claims of Agoro that the DHS/ICE violation of the fifth

Amendment right to due process and order a constitutionally adequate hearing where

Government must demonstrate that petitioner continue detention is Justified.

Also it is to be noted that the petitioner Agoro deportation was no longer practically

Attainable such that the petitioner detention did not serve its purported immigration purpose and

that Agoro deportation from United States was never a possibility during this process, Nigeria

Consulate has denied Agoro travel document on diplomatic grounds and made a request seeking

for his release from detention to DHS/ICE. See accompanied by a request attached Exhibits.

Agoro respectfully  request that the Court Grant a preliminary injunction against the

Government's ongoing violation of the INA and due process clause and order that the petitioner

Be afforded an individualized bond immediately upon the respondent receipt of this reply where

The Government bears the burden of demonstrating that the continue detention is Justified.

See the ["MAILING ENVELOPE"], as ["EXHIBIT"], the respondent mail its opposition

To Agoro on the 19th 0f January 2012, Agoro received the respondent opposition on the 20th of

January 2012, instead of December 23, 2011, and Agoro has filed a default judgment on the

Respondent, it is to be noted that Agoro is in deportation proceedings, because his Immigration

Attorney submitted his appeal two days late before the Board of Immigration Appeal, thus Agoro

Respectfully requests for the same relief that he is entitle in this proceedings by declaring the Respondent in default, and order Agoro release on Supervision/Bond alternatively electronic Monitoring system.

## CONCLUSION

Petititioner Babatunde Kareem Agoro entered the United States from Nigeria More than 32 Years ago in January 1980, On December 1 1983, he became a lawful Permanent resident of this Country. He now faces removal from this Country based On Twenty two year old conviction for credit card fraud and Failure to Appear Crimes that may well not provide legal grounds for removal from this Country.

The Ninth Circuit has held that "Failure To Appear" in violation of 18 U.S.C. Section 3146 (a)(1) does not categorically constitute an aggravated felony. Renteria-Morales v. Mukasey 551 F. 3d 1076 (9th Cir. 2008). And the record of Mr. Agoro's conviction for Failure To Appear does not support a finding that the manner in which he violated Section 3146 (a) falls within the definition of 8 U.S.C. Section 1101 (a)(43)(T). See also Barnaby v. Reno, 142 F. Supp. 2d 277 (D. Conn. 2001) Ahmet Ferraj v. Ashcroft (D. Conn. 2003). Petitioner Failure To Appear in violation Of Connecticut statute did not constitute an aggravated felony nor does the Failure To appear meet the BIA'S definition of a crime involving moral turpitude.... conduct That shocks the public conscience as being inherently base, vile or depraved and Contrary to the accepted rules of morality and the duties owned between persons Or to society in general See Rodriguez v. Gonzales, 451 F. 3d 60, 63 (2nd Cir. 2006). Thus the ICE'S determination that Mr. Agoro is removable base on 1. His Conviction for an aggravated felony, and 2. Two convictions for crimes involving

Moral turpitude appears to be incorrect.

The Petitioner assert that his order of deportation was improper and or unlawful Due to Ineffective Assistance of Counsel by not raising the issue of whether the Crime of Petitioner "Failure to Appear" constitutes aggravated felony and for not Filing a Petition for Review to the United States Court of Appeal for the Second Circuit. The Petitioner argued that his crime is neither morally Turpitudinious nor Aggravated felony See: **MATTER OF "SHORT"** 20. 1 & N. Dec 136 (BIA 1989). In Determining whether an offense involves CIMT, a fact finder examines the crime as Defined by the elements in the criminal statutes, not the defendants actual conduct. A conviction under a statute in which **THEFT, FRAUD, INTENT TO COMMIT BODILY HARM** is an essential element involves **"MORAL TURPITUDE"** It is the elements of the offense that determine whether a conviction is ["CIMT"], not the name or designation of the offense. "Failure to Appear" conduct does not Amount to **"FRAUD"** because it **"LACK FRAUD INTENT" "MORAL TURPITUDE"** Is not defined anywhere in the INA and the INA'S legislative history sheds no light On congressional intended meaning of the term. See: **MICHEL V. INS** 206 F. 3d 253, 263, (2nd Cir. 2000) This Court held, that criminal possession of stolen Property is **"MORALLY TURPITUDINIOUS"** because knowledge is a requisite Element.... And However, That **"CORRUPT SCIENTER" IS THE "TOUCH STONE" OF "MORAL TURPITUDE".**

As noted above the Petitioner assert that his conviction of "Failure to Appear" is Not aggravated felony, but the Counsel rendered Ineffective Assistance by his Failure to raise the issue of "whether a crime of "Failure to Appear" for sentencing Constitutes aggravated felony **"HURT"** Mr. Agoro and cause **"PREJUDICE"**,

Further it appears that the fact that the conviction was considered an aggravated

Felony factored into the IJ'S balancing of the factors in reaching a conclusion that

The conviction that provided the foundation for the **"ORDER TO SHOW CAUSE"**

Constitutes a negative factor of a serious nature. It is therefore upon ["Mr.

AGORO"] to present unusual and outstanding equities to outweigh the evidence of

His undesirability, thus, it cannot be said for certain that the result of the IJ'S

Decision would have been the same had it been argued that the conviction did not

Constitute an aggravated felony or moral turpitude. See: **JORDAN V. DE GEORGE**

341 U.S. 223, 229, (1951) The Court held that moral turpitude refers general terms

As "An act of baseness or depravity contrary to accepted moral standards See:

**GUARINO V. UHL** 107 F. 2d 399 (2nd Cir. 1939). See: **RODRIGUEZ V.**

**GONZALES** 451 F. 3d 60, 63, (2nd Cir. 2006), See: **UNITED STATES EX REL**

**MEYER V. DAY** 54 F. 2d  336, 337, (2nd Cir. 1931). See: **UNITED STATES EX**

**REL BERLANDI V. RELMER**, 113 F. 2d 429, 431, (2nd Cir. 1940). This Court held

an intent to steal or defraud has repeatedly been held to render an offense one

which involves moral turpitude. [CIMT]. Moreover, The credit card fraud and the

"Failure to Appear" are not separate and distinct and thus do not fall under 241 (a)

(2)(A)(ii). "Failure to Appear" pursuant to 18 U.S.C. 3146 (a) does not involve

malum parse and has never been deemed to constitute a crime of moral turpitude

by either the BOARD OR THE FEDERAL CIRCUITS OR THE SUPREME COURT. The

Petitioner's "Failure to  Appear" crime does not admittedly constitute a crime

Involving moral turpitude nor does "Failure to Appear" meet the BOARD definition

Of a crime Involving moral Turpitude .... Conduct that shocks the public Conscience

As being Inherently base, vile or depraved and contrary to the accepted rule of

Morality and duties owned between persons and society in general **RODRIGUEZ V. GONZALES** 451 F. 3d 60, 63, (2nd Cir. 2006). Thus, However, the offense Underlying a conviction under 3146 (a) of the act does not involve the element of fraud or evil intent and therefore the conviction does not render an alien Deportable under Section 241 (a)(2)(a)(ii) of the act as an alien convicted of a Crime Involving moral turpitude. See: The Indictment of Mr. Agoro's Failure To Appear, the record of Mr. Agoro's conviction for the offence of Failure To Appear Does not support a finding that the manner in which he violated Section 3146 (a) Falls within the definition of 8 U.S.C. 1101 (A)(43)(T). It is to be noted that the Petitioner has expressed his main concerns and reservations about returning to his Country at this time due to his religious convert since the Country condition is bad for Muslim convert. As Mr. Agoro renounced Islam and embraced Christianity. Agoro faces the perils of returning to a Country that is ["PLAGUED"] by ["VIOLENT"] religious conflict and a growing movement of ["FUNDAMETALISM"]. Should Agoro be forcibly returned to Nigeria he will undoubtedly face extreme harsh conditions and the ability to lead a full and productive life will be seriously Hampered, if not impossible as a convert.

Radical Islamists will deem him as one that deserted his Muslim faith, his Family, and has brought shame upon ["GOD"] and ["ISLAM"] because Agoro makes ["APOSTASY"] turning against ["ISLAM"] A serious crime following ["ISLAM"] ["APOSTASY"] is a crime against ["GOD"] and one of the ["GRAVEST SINS"] one Can ["COMMIT"]. As such ["APOSTASY"] warrants death as a punishment.

Given this facts and circumstances, there is no reasonable foreseeable future

For Agoro returning to his Country because of the religious persecution.

Mr. Agoro renounced ["ISLAM"] for ["CHRISTIANITY"] from ["ISLAM"].
["APOSTASY"]  from ["ISLAM"] received temporal punishment including ["DEATH"]
For violating the ["TENETS"] of ["ISLAM"] and ["APOSTASY"] from ["ISLAM"] is
Indeed a capital offense under the ["WORLD ISLAMIC LAW"] See THOMAS PATRIC
HUGHES ["APOSTASY FROM ISLAM"] "16" (1895).

["APOSTASY FROM ISLAM"] is indeed a capital offense under the law "HUGHES
SUPRA AT "16". Agoro will be viewed as a ["TRAITOR TO ISLAM"] upon return to
His Country, it is unlikely that the conditions will improve anytime in the reasonably
Foreseeable future, as such Mr. Agoro in this matter, it is unequivocally is in
Extreme jeopardy if he returns to Nigeria.

It is respectfully submitted that given the circumstances, the case should be
Recommended with instructions to order DHS/ICE to hold a "BAIL HEARING" or
"SUPERVISION Immediately Pending the determination of his appeals.

Respectfully Submitted

Babatunde Kareem Agoro
Etowah County Detention Facility
827 Forrest Avenue
Gadsden, AL. 35901.

## CERTIFICATE OF SERVICE

I Babatunde Kareem Agoro, [PROSE] hereby affirm under the penalty of Perjury that the following is true. On the 25th of January 2012 served the Petition for a writ of Habeas Corpus pursuant to Section 2241 of the Title 28 of the United States Code, Memorandum of law and Answer of return with Exhibits to the clerk of the Court via U.S. postal service, by priority mail and given it to the Institutional Staff specialist to deposit it in an Institutional official mail room addressed To:

UNITED STATES ATTORNEY'S OFFICE
NORTHERN DISTRICT OF ALABAMA
1801 Fourth Avenue North
Birmingham, AL. 35203

Respectfully Submitted

Babatunde Kareem Agoro
Etowah County Detention Facility
827 Forrest Avenue
Gadsden AL 35901.

**SWORN TO BEFORE ME THE**
**25th Day of January 2012**

**NOTARY PUBLIC SEAL**

MY COMMISSION EXPIRES APRIL 27, 2014

43