FILED

2012 Mar-12  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DISTRICT

Babatunde Kareem Agoro

               Plaintiff-Petitioner

VS.

Attorney General

               Defendant-Respondent.

**CASE NO: 11-3951**

**MOTION TO EXPEDITE
DECISIONS IN THE
PETITIONS FOR WRIT OF
HABEAS CORPUS**

## TO HONORABLE JUDGE MICHAEL T. PUTNAM
## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner [Babatunde Kareem Agoro] [''Petitioner''], appearing pro se, hereby

Petitions this court for a writ of habeas corpus and seeks declaratory and injunctive

Relief to review the lawfulness of his detention by the United States Department of

Homeland Security, Immigration and Customs Enforcement [''ICE''] for more

Than six months because ICE has been unable to obtain travel documents

Necessary to deport him to [NIGERIA]. In  Support of this Petition and Complaint,

Petitioner alleges as follows:

1

**CUSTODY**

1.    Petitioner is in physical custody of respondents and detained at the Etowah County Detention Facility Gadsden, Alabama, pursuant to a contractual Agreement with the Department of Homeland Security.

**JURISDICTION.**

2.    This action arises under the United States Constitution, the Immigration And Nationality Act of 1952, as amended, 8 U.S.C. section 1101 et seq, and the Administrative Procedure Act, 5 U.S.C. Section 701 et seq.

3.    Jurisdiction exists in this Court pursuant to Section 2241 et seq, 28 U.S.C. Section 1331, The APA, 5 U.S.C. Section 701 et seq., the Declaratory Judgment Act, 28 U.S.C. Sections 2201 et seq, and the All Writs Act, 28 U.S.C. Section 1361.

4.    Petitioner has exhausted any and all administrative remedies to the extent Required by law.

**VENUE**

5.    Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Northern District of Alabama, the judicial District in which petitioner is

currently Detained.

**PARTIES.**

6.    Petitioner is a Native and Citizen of [''NIGERIA'']. Petitioner was first

Taken into the Respondent's custody on January 16 2009, and has remained in

Their custody continuously since that day in various contracted ICE /DHS

Detention

7.    Respondent-defendant Chief Scott Hassell is sued in his official capacity

As the Officer-in-Charge at Etowah County detention Facility In this capacity

He maintains Responsibility over the day-today operations at Etowah County

Detention Facility, where Petitioner is presently detained by ICE.

8.    Respondent-Defendant Philip T. Miller as the Field Office/Operation

Director for ICE/DRO. As such, he is the designee of the Acting Director of

ICE/DRO for the Northern District of Alabama, including jurisdiction of

Detainees held in Etowah County Detention Facility.

9.    Respondent-Defendant John Morton is sued in his official capacity as

Director of ICE/DRO, he manages the detention and removal of ICE detainees

And oversees law enforcement officers and support personnel used by ICE.

10.   Respondent-Defendant John Morton is sued in his official capacity as the

Assistant Secretary of ICE. In this capacity he is responsible for the

Administration and Enforcement of all the functions, powers, and duties of ICE.

3

He is also a legal Custodian of petitioner.

11.   Respondent-Defendant Janet Napolitano is sued in her official capacity as Secretary Of the Department of Homeland Security. In this capacity she is Responsible for the Administration of the Immigration laws pursuant to 8 U.S.C. Section 1103(a). And has Ultimate custodial authority over petitioner.

12.   Respondent-Defendant Eric Holder is sued in his official capacity as Attorney General Of the United State Department of Justice.

**FACTS**

13.   Petitioner Babatunde Kareem Agoro, is a citizen of [''NIGERIA'']

14.   Petitioner first entered the United states on about January 5 1980 and Never went Back since the day of arrival.

15.   Petitioner adjusted his status to a lawful permanent resident on or about December 1 1983.

16.   On November 29 2005 the Immigration Judge erroneously ordered the Petitioner deportable to his Country Nigeria on the grounds that his crime of Moral Turpitude /Aggravated Felony.

17.   Petitioner's appeal was denied by the Board of Immigration Appeal On September 27, 2007.

18.   Petitioner's petition for review to the United States Court of Appeals for The Second Circuit in the Case No: 11-1771 is pending before the panels.

19.   Petitioner was taken into custody by ICE On January 16 2009 and has Been in the Custody of ICE/DHS for more than six months since his Deportation order became final, In fact petitioner has been detained for [''38 Months'']

20.   Petitioner has cooperated fully with all efforts by ICE to remove Petitioner From The United States. Specifically, petitioner; has provided Necessary Biographical information and have spoken to the Embassy/Consulate, and Complied with all demands of ICE.

21.   To date, however, ICE has been unable to remove petitioner to Nigeria.

22.   Petitioner's 180 day-Custody Review by the Department of Homeland Security Headquarters Post-Order Detention Unit [HQPDU] in Washington, D.C. was conducted far beyond the time necessary, specifically it was Conducted after [''30 Months ''] and a notice of 24 Hours was given for the Interview without given any opportunity to secure Counsel for this Representation and this interview was conducted on June 24 2011 at which time Petitioner's release from custody was denied on October 12 2011 and a copy of That decision is attached herewith exhibits.

23.   If released, petitioner will reside with his wife and children at 3325 Neptune Avenue Brooklyn NY. 11224, additionally, petitioner cannot be Removed to his country because of His religious conversion from Muslim to

Christianity, and also Nigerian Embassy has Requested from ICE for his

Release, and he should be released from custody, because indefinite detention is

Not justified and violates substantive due process. See ZADVYDAS, 533 U.S.

At 690-91.

## MEMORANDUM OF LAW

Comes now Petitioner Babatunde Kareem Agoro, appearing prose, and

Pursuant to the Court's order of December 2 2011, traverse as follows:

### 1 .INTRODUCTION

Petitioner reasserts that this petition is due to be granted for the reasons set out

Below.

### 11.  FACTS

On January 16 2009 Petitioner was taken into ICE custody in New York after

Final administrative order of deportation. After been processed at Varick Federal

Detention Facility NY, petitioner was transferred into various Contracted

Immigration Detention Facility that Houses Immigration Detainees beginning from

Varick Detention Facility New York, New Mexico, Oakdale Louisiana, Jenna

Louisiana, Orange County New York, Batavia New York, Tensas Lousiana,

Gadsden Alabama.

Petitioner is currently detained at Etowah County Detention Facility Gadsden Alabama. However, to this day petitioner has received no records of his first Custody review despite Respondents claim that ''All post Custody Detention Reviews have been conducted'' and that Petitioner was served with a Decision to Continue Detention on October 12, 2011 See exhibit.

Respondents have produced no certificate of service to support this claim see 8 C.F.R. Section 241.4(d)(''A copy of any decision by the district director, Director Of the Detention and Removal Field Office, or Executive Associate commissioner To release or detain an alien shall be provided to the detained alien.'') Petitioner Have Made [''2''] requests to his deportation officer for these records. See Exhibit Dated August 15 2011, which the request was ask to request for [''FOIA''] that his Copy of the request would not be provided for him without a Freedom of Information Act filing. Id.

The failure to provide Petitioner with a copy of this copy of Custody decision and recommendation to [HQPDU''], if ever conducted, is in violation of 8 C.F.R. Section 241.4(d). Petitioner doubts whether a proper 90-day-custody review Was ever conducted, a violation of Petitioner's due process rights under the fifth And fourteenth amendments of the United States Constitution Plyder v. Doe 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L. Ed 2d 786 (1982) (''Aliens whose presence in This Country is unlawful, have long been recognized as [''PERSON''] guaranteed

Due process of law by the Fifth and Fourteenth Amendments.''Yick Wo v.

Hopkins 118 U.S. 356, 368, 6 S. Ct. 1064, 30 L. Ed. 220 (1886) (The Fourteenth

Amendment to the Constitution is not confined to the protection of citizens ....

[Its] provisions are universal in their application, to all persons within the territorial

Jurisdiction.'')(Citing Bayo v. Napolitano 593 F. 3d 502 (2009)

On October 12, 2011 Petitioner was served with a 180-day custody review

Decision to Continue Detention based on a [''STILL PENDING''] request for his

Travel documents See Exhibits  Travel Documents have never once been

authorizes for petitioner despite Respondent's claim implying otherwise. See

Respondent Opposition /Declaration. [The Government of Nigeria has not

indicated that they would not authorize another travel document for

Agoro.''][Emphasis Added]. Petitioner sent several requests to ICE Headquarters

Post Order Detention Unit Requesting a review of petitioner's custody status in

light of petitioner's Prolonged detention See Exhibit HQPODU Custody Review

letter dated October 12 2010. ICE regulation 8 C.F.R. 241.13(e)(1) requires a

Response to the Petitioner's Request within ten Business days. To date petitioner

Received no response.

Since the original filing of this habeas petition and approximately thirty eight

[''38 Months''] after he has been detained in various contracted  Immigration

Detention.

On January 9, 2012, ICE took [''20''] Nigerian from Etowah County Detention Facility and were taken to the ICE office in Atlanta, GA, to conduct an interview With a Nigerian Consulate Official as part of the travel document application Process, and On January 23, 2012 The Chartered flight to Nigeria left for Nigeria With [''13''] of the twenty [''20''] total Nigerian detainees that were back to Etowah County Detention Facility, seven detainees were returned back to Etowah County Detention Facility, because travel documents were not issued to them, and On February 6, 2012 petitioner called Nigeria Consulate/Nigerian Embassy in Washington to confirm if the travel documents will be issued for the petitioner, Affirming that there is no significant likelihood that the Nigerian Consulate would Issue travel documents in the reasonably foreseeable future. On this particular trip More than one hundred [''100''] Nigerians from several different detention centers Around the U.S. were issued travel documents and deported.

Petitioner was informed by his deportation officer that the process to obtain his Travel documents is still ongoing, To date, it has been more than [''38 Months''] Since petitioner's has been detained within which an actual flight filled with Nigerian deportees was scheduled and has departed without petitioner being issued Travel documents to board.

The 180-day deemed reasonable to effectuate actual removal of a detained alien

Under final order of deportation has been clearly exceeded. Zadvydas v. Davis 533

U.S. 702 (2001).

It must be taken into account that of the more than One Hundred persons deported

To Nigeria on January 23, 2012, the likelihood of all of them being detained for a

Period of time equal to, or greater than, the Petitioner's [''38Months''] is slim to

None. Conversely, there is a far greater and almost certain likelihood that the

Detention period of at least one, if not a good number, of those on January 23,

2012 flight was less than the Petitioner's 38 Months. The Nigerian

Consulate/Nigerian Embassy was well aware of requests for petitioner's travel

Documents, along with all the others on board that flight, yet decidedly did not

Issue travel documents for Petitioner in particular, despite a perfect discretionary

Circumstance and opportunity to respond requests that have been [''Pending'']

ever since the petitioner has been in deportation proceedings. Petitioner

Respectfully submits that it is now beyond that there is no **significant likelihood**

That he will be removed in the **reasonably foreseeable future** and argues this

Court to have Respondents provide substantiated proof otherwise,. See Khader v.

Holder, 2011 WL 7277588, *5, at 2 (N.D. AL.)(July 7, 2011);

   (''Petitioner has the initial burden under Zadvydas to provide
   Good reason to believe that there is no significant likelihood
   His removal in the reasonably foreseeable future. Petitioner
   Has now been detained by ICE awaiting removal .... Almost

> Eleven months since the order providing for his removal
> Became final, well in excess of the six-month presumptively
> Reasonable period under Zadvydas. It is undisputed that
> Petitioner himself has done nothing to obstruct or delay his
> Deportation …. Despite repeated attempts by both various ICE
> departments and Petitioner himself to obtain information on
> the status of the travel document application, the Jordanian
> Embassy has provided neither any assurance that a travel
> Document is forthcoming nor limited at any timetable for
> Resolution of Petitioner's case, Such circumstances may be
> Themselves sufficient to meet a petitioner's burden.'')

Petitioner reaffirms that all [4] Respondents named are proper. See Vasquez v.

Reno 233 F. 3d 688, 690, 692-694 (1st Cir. 2000), cert. Denied, 122 S. Ct. 43

(2001). Petitioner also reaffirms that he is entitled to release pending deportation;

He is not a danger to the community, a flight risk, or unlikely to comply with the

Removal order; and Respondents are not entitled to detain him indefinitely pending

Removal.

     1.  Analysis and Argument of Petitioner's Position.

**A.**  All Four [4] Respondents are properly named for this Petition.

**B.**  Petitioner is entitled to Release Pending Deportation.

Petitioner asserts that the prolonged continuation of his detention has not been

Reviewed and acted upon pursuant to all regulatory guidelines. In Haynes v. DHS

U.S. Dist. LEXIS 13662 (2005). It was determined that the procedures set forth in

8 C.F.R. Sections 241. 4(i) would satisfy the demands of due process, because an

Alien is entitled to a records review by a panel and also a personal interview if the

Review panel does not recommend release or the [''HQPDU''] Director does not

Accept a review panel's recommendation of release. Ngo v. INS 192 F. 3d 399

(1999).

Petitioner has received no hearing before any member panel and no

Personal interview took place to determine whether his prolonged detention of

[''38 Months''] is justified, instead the only process he has received consists of a

[''Grudging and Perfunctory''] administrative custody review in which the

Decision to detain him was based on the fact that a request for travel documents is

''Still pending.'' To date, Petitioner has not received the **proper** 180-Days review

Pursuant to 8 C.F.R. 241.4(i). Prolonged detention of Petitioner without adherence

To regulatory review standards denies Petitioner of his due process rights and

Violates his constitutional rights to life, liberty, and family. Casas-Castrillion v.

Dep't of Homeland Security 535 F. 3d 950 (9th Cir. 2008); Tijani v. Willis 430 F.

3d 1244 (9th Cir. 2005);  Ly v. Hansen 351 F. 3d 271 (6th Cir. 2003); D'alessandro

v. Mukasey  628 F. Supp. 2d 379 2009 Dist Lexis 87056 (WDNY. 2009); Lawson

v. Gerlinski 332 F. Supp. 2d 743 (2004).

A personal meeting with the detainee compels the review Board to appreciate

The significance of there decisions in a way that completing a standardized work

sheet cannot. This helps ensure that custody determination do not become

mechanical exercises. Ngo v. INS 192 F. 3d 399 (3rd Cir. 1999); United States v.

Caceras 440 U.S. 741, 759, 760, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979)(''The
Immigration regulations involved here do not merely facilitate internal agency
housekeeping but rather afford important and imperative procedural safeguards to
detainees''); Interalia, United States Ex Rel. Accardi v. Shaughnessy 347 U.S. 260,
267, 74 S. Ct. 499, 98 L. Ed. 681 (1967) (''This Court has consistently demanded
Governmental compliance with regulations designed to safeguard individual
Interests even when the rules were not mandated by the constitution or federal
Statute'').

Respondents assert that after a review of Petitioner's file, he is considered ''at
This time a flight risk latter stating that and /or unlikely to comply with the
Removal latter stating that because of his credit card conviction, however,
Respondents present no substantiated evidence to prove this allegations; at no time
Prior to this Petition is the Petitioner deemed a flight risk and/or unlikely to
Comply with the removal order; nor are these allegations presented as part of
ICE's Decision to continue detention in the most recent official ICE Headquarters'
Post-Detention Unit [''HQPDU''] custody review signed by [''HQCMU''] Chief
Daniel A. Bible''. It is only after Petitioner sought relief in Federal Court that ICE
Developed these reasons for Petitioner's continue detention.

Petitioner was never before determined to be a flight risk or unlikely to
Comply with terms of supervision. However, ICE has now concluded Petitioner as

13

Such only for purposes of refuting Petitioner's pending Habeas relief and have

Based these conclusions primarily on the Petitioner's criminal history with no

Other Substantiated evidence. It has been cautioned that ''To presumed

dangerousness to The community and risk of flight based solely on [''An

Alien's''] past record does Not satisfy due process.'' Ngo v. INS 192 F. 3d 399. A

personal interview Provides the best opportunity for the review Board to assess

whether a past Criminal remains A risk to the community. Petitioner is entitled to

the type of Meaningful review contemplated by 8 C.F.R. 241.4(i). DHS/ICE has

not provided Petitioner this Opportunity and his Habeas Corpus relief should be

granted as a Result.

What 's worse, Respondent's further asserts [''After a full and complete

Assessment and review of the facts of [''Petitioner's''] case,'' the determination to

Continue detention because of [''Two Decades Old Conviction''] as justification

To detain petitioner, This must mean that either Respondents are deliberately

Attempting to mislead this Court or there was never a [''Full and complete

Assessment and review of the facts of [''Petitioner's''] case and Petitioner is being

Held completely arbitrary under the law.

As recognized in Zadvydas, ''Under the Majority 's view …. It appears that

The alien must be released in six months even if presenting a real danger to the

Community ,'' Zadvydas, 533 U.S. at [446  F. Supp. 2d 1192][Kennedy , J.

Dissenting][Emphasis Added]. The Supreme Court also stated. ''We have upheld

Preventative detention based on dangerousness only when limited to specially

Dangerous individuals and subject to strong procedural protections .... In cases in

Which preventative detention is of potentially indefinite duration, we have also

Demanded that the dangerousness rationale be accompanied by some other special

Circumstance, such as mental illness, that helps to create the danger. ''Zadvydas

533 U.S. at 691 (Citing Kansas v. Hendricks, 521 U.S. 358, 368, 117 S. Ct. 2072,

138 L. Ed. 2d 501 (1997). ''These added statutory requirements serve to limit

Involuntary civil confinement to those who suffer from a volitional impairment

Rendering them dangerous beyond their control, ''Kansas v. Hendricks 521 U.S.

358, 368, 117 S. Ct. 2072, 138 L. Ed. 2d. 501 (1997).

Petitioner has never been charged or convicted of a crime of violence and

Respondents present no evidence to suggest that he suffers from a volitional

Impairment, mental illness, or special circumstance creating a greater danger of the

Commission of future crimes, although Petitioner has expressed utmost regret for

His actions and his intention to avoid criminal activity in the future.

Respondents also misleadingly cite the background information in the

Supreme Court's ruling in Zadvydas v. Davis, 533 U.S. 678 (2001).

''In 1995, after being held in custody for nearly a year while
Awaiting deportation, Zadvydas sought habeas review;
Pursuant to 28 U.S.C. Section 2241, in the Unite States
District Court for the Eastern District of Louisiana. In 1997,

> The District Court ordered Zadvydas released .... The United
> States Court of Appeals for the Fifth Circuit reversed the
> District Court's decision ....

However, the Respondents stop short of informing this Court that Supreme Court

Ultimately vacated the decision of the Fifth Circuit Court of Appeals and, in light

Of the Supreme Court's ruling, Mr. Zadvydas was released under supervision.

> ''The Fifth Circuit held Zadvydas ''Continued Detention lawful
> as long as ''good faith efforts to effectuate .... Deportation
> continue'' and Zadvydas failed to show that deportation will prove
> ''Impossible.'' 185 F. 3d at 294, 297. But this standard would seem
> to require an alien seeking release to show the absence of any
> prospect of removal—no matter how unlikely or unforeseeable –
> which demands more than our reading of the statute can bear ....
> Consequently, we vacate the decisions below and remand both
> Cases for further proceedings consistent with this opinion.
> Zadvydas v. Davis, 533 U.S. 702 (2001).

Respondents claim that ''As inadmissible alien or criminal alien, Agoro does

Not within the protections of Zadvydas v. Davis, 533 U.S. 678 (2001) and may be

Indefinitely detained pending deportation''. However, in January 2005 the

Supreme Court decided Clark v. Martinez 125 S. Ct. 716 (2005), holding that

Standard announced in Zadvydas also applied to inadmissible aliens under final

Orders of removal, even if they have never been formally admitted to the United

States, must be released after six [''6''] Months of detention if they can prove that

There is not a significant likelihood that they will be removed in the reasonably

Foreseeable future.

In more than [''38 Months''] of detention, ICE/DHS has secured no travel

Documents to deport Petitioner, despite their claims. See Respondents response

DHS continues to secure the necessary travel documents to deport the Agoro.

DHS has not followed all regulatory requirements and have nothing to show for

Their ''[''DILIGENT''] pursuit of the removal of Petitioner. Id. Respondents have

Failed to provide any credible evidence to support the lawful construction of there

Newfound claims that Petitioner would not be released and continue detention

Based on more than [''23 Years ''] old conviction, Therefore, Petitioner's

Prolonged detention is not within the parameters set forth by the United States

Supreme Court.

Therefore, given the above cited case laws and the lack of execution of

Regulatory and statutory guidelines, Petitioner respectfully asserts that the relief

Sought through this petition should be granted.

Respondents Not Entitled to Detain Petitioner Indefinitely Pending Removal

ICE has not satisfied its burden of showing that Petitioner is significantly

Likely to be removed in the reasonably foreseeable future. Already, Petitioner has

Been detained for over Thirty Eight Months. This period of detention exceeds the

Six [''6''] Months. This period of detention exceeds the Six [''6''] Months

presumptively reasonable period of detention authorized by Zadvydas. Zadvydas v.

Davis 533 U.S. 678, 701 (2001). Although ICE/DHS states that it has made a

Request for travel documents from the Nigerian Consulate. The fact is that no

travel Documents have been issued to date. Because the Consulate has not issue

travel Documents, and there is no evidence when, if ever, travel documents will be

Issued

Respondents have not satisfied their burden and Petitioner must be released.

Shefqet v. Ashcroft No. 02 C 7737, 2003 WL. 1964290.*5 (N.D. III. Apr. 28 2003)

(INS failed to carry burden of proof where no travel documents had been issued,

Yugoslavian alien had been detained for 17 Months, and INS had been able to

Remove other aliens to Yugoslavia during that period);

Okwilagwe v. INS No. 3-01-CV-1416-BD, 2002 WL 356758, *2-3 (N.D. Tex.

Mar 1 2002) (INS failed to sustain its burden of showing alien's removal to

Nigeria would occur in reasonably foreseeable future when alien detained for 11

Months, travel documents not issued and no certainty as to when they might be

Used); See also Seretse-Khama v. Ashcroft 215 F. Supp. 2d 37, 53 (D.D.C. 2002)

(Finding that Respondents failed to meet their burden of proof under Zadvydas

Where they ''have not demonstrated to this Court that any travel documents are in

Hand nor have they provided any evidence, or even assurances from the Liberian

Government, that travel documents will be issued in a manner of days or weeks or

Even months'').

Respondents cite Akinwale v. Ashcroft 287 F. 3d 1052 (''The alien …. Must

Provide evidence of a good reason to believe that there is no significant likelihood

Of removal in the reasonably foreseeable future.'') as justification to deny the

Petitioner's motions. However, respondents fail to consider the fact that

Akinwale's petition was prematurely filed.

Notwithstandly, Respondents cannot seriously contend that Petitioner is too

Dangerous to be released. Moreover, Zadvydas does not permit Respondents to

Indefinitely detain Petitioner based on allegations of criminal dangerousness alone.

In Zadvydas, the Supreme Court held that an alien under a final removal order

Could be held longer than the presumptively-reasonable period of Six [''6'']

Months if the alien is ''specially dangerous''.  Zadvydas v. Davis 533 U.S. 691

(2001). Having a criminal record is not an insufficient reason to refuse to release

An alien after the Six [''6''] Months removal period has expired. Id. at 692

(Noting a ''serious constitutional problem arising out of a statute that .... Permits

Indefinite, perhaps permanent deprivation of human liberty'').

The Court also suggested that the Constitution prohibited an administrative agency

From making unbelievable decisions affecting one's fundamental rights Id.

To implement Zadvydas, the U.S. Government established regulations

Setting forth a detailed quasi-civil commitment proceeding that it must follow in

Order to continue to detain an alien whose removal is not significantly likely to

Occur in the reasonably foreseeable future. See 8 C.F.R. 241.14. These regulations

Established a review procedure in Immigration Court, which ICE itself must

19

Initiate, whenever ICE seeks to indefinitely detain an alien. ICE's regulations list

Only four circumstances where an alien main remain in detention even though his

Or her removal is not reasonably foreseeable: (1) where the alien has a highly

Contagious disease;  (2) where serious adverse foreign policy consequences would

Result from the alien's release; (3) for security or terrorism concerns or (4) where

The alien is determined to be especially dangerous. Id.

Petitioner does not fall into any of these categories, and ICE has not

Initiated any of the procedures required to certify Petitioner as falling into any of

These categories. To the extent Respondents are arguing that they can continue

Indefinitely detaining Petitioner on the grounds that he is ''specially dangerous'', it

Has not even attempted to comply with its own extensive procedures to obtained a

Certification of special dangerousness from the Commissioner, it has not ordered

That Petitioner undergoes a medical examination, and it has not initiated a

Reasonable cause proceeding in Immigration Court. ICE's own regulations provide

That without proving ''special dangerousness'' by clear and convincing evidence

Before an Immigration Judge; ICE does not have the ability to indefinitely detain

An alien who has no significant likelihood of being removed within [''6''] Months

Period. In short ICE has not followed its own rules, or the due process demanded

By the U.S. Constitution and by Zadvydas. It follows that Respondents assertions

That petitioner can be indefinitely detained due to his criminal record should carry

No weight whatsoever in this Court's determination. In fact, according to ICE

Regulations pursuant to 8 C.F.R. 241.14, in light of Zadvydas, and for purposes of

The relief currently sought by this petition, Respondents have presented no

Applicable reason for Petitioner's prolonged detention.

Respondents claim ''The Government of Nigeria has not indicated that

They would not authorize another travel document for Agoro , further stating that

They have received travel documents twice for Agoro''. This claim is patently

Untrue and unsupported. Travel documents have never once been authorize for

Petitioner and if Respondents claim otherwise, Petitioner respectfully requests that

This Court compels Respondents to present substantiated evidence before the

Honorable Judge. It is apparent that is another one of the Respondent's baldly

Unfounded assertions and is a blunt tool to hold the Petitioner in detention

Unlawfully and indefinitely. See Khader v. Holder, 2011 WL. 27277588,*6, at 2;

*7 (N.D. AL. (July 7, 2011):

> (''First, Stutanto [The ICE Deportation Officer] states, ''There is
> No indication that Petitioner will not be issued a Jordanian travel
> Document,'' (Sutanto Decl.at 49). However, Petitioner's travel
> Document request  was submitted to Jordanian authorities over
> Eight months ago, and they have refused multiple requests, both
> By ICE departments and the Petitioner, to provide any information
> Whatsoever regarding the status or prospects of the requests, other
> That to say it is ''pending''. The Government offers nothing to
> Suggest when an answer might be forthcoming or why there is
> Reason to believe that he will not be denied travel documents. The
> Fact that Jordanian authorities have not said [''NO''] or advised

That the Petitioner's request is going to be denied does little in
It to rebut the Petitioner's showing that there is no significant
Likelihood of his removal in the reasonably foreseeable future.'');

(''In summary, the Government's response certainly establishes
That it has attempted to secure a travel document for the Petitioner
From Jordan in good faith and with diligence, but the government
Can identify no specific evidence to support the position that his
Removal is likely in the reasonably foreseeable future. Accordingly,
Petitioner is entitled to Habeas relief under Zadvydas authorizing
His release on an order of supervision.'')

Petitioner respectfully requests that this Court conduct an expedited hearing on

The legality of Petitioner's unjustified detention of more than [''38 Months''].

The first Six Months are considered [''PRESUMPTIVELY REASONABLE'']

Under Zadvydas, the last [''32 Months''] are not. Zadvydas v. Davis 533 U.S. 692

(2001). Zadvydas held that the statute authorizing post-removal-order detention. ''

''Read in light of the constitutional demands, limits an alien's post-removal-period

Detention to a period reasonably to bring about that alien's removal from the

United States, '' Id. In cases such as the one at hand, Zadvydas instructs that what

Counts as the reasonable foreseeable future accordingly diminishes; in effect, it

Becomes closer in time given the protracted detention thus far. Id.

## Conclusion

Petitioner strongly questions the extent to which Respondents are even Familiar with the specifics of Petitioner's case, as evidenced by the several Blatantly false and deliberately misleading claims made by respondents. In light of these concerns, as well as the statutory and constitutional due process Concerns raised by Petitioner's prolonged detention. Petitioner believes that he is Entitled to the relief sought by this petition. Petitioner clearly has a non-frivolous Claim. Numerous Courts have granted relief in similar circumstances, following Zadvydas with guidance from various other Federal Court decisions. Zadvydas Fully applies to the Petitioner because travel document have not been issued in Over [''38 Months''] and it is clear from all these factors and evidence that Petitioner has a strong reason to believe that there is no significant likelihood of His removal In the reasonably foreseeable future.

The Nigerian Consulate has not issued a travel document to Petitioner in [38 Months''] within which a deportation flight to Nigeria was recently chartered And has since departed. It must now be considered more than vaguely apparent That the Government of Nigeria is extremely unlikely, if not completely unwilling To issue Petitioner travel documents in the reasonably foreseeable future.

Moreover, The Nigerian Consulate has requested to the ICE/DHS for Petitioner's

Release. See Exhibits, Furthermore, prolonged detention without a meaningful and

Proper hearing to determine if such prolonged detention is justified is unreasonable

And not in accordance with the law.

Respondents must not be allowed to continue detention of the Petitioner and

Petitioner prays to BE RELEASED IMMEDIATELY.

Respectfully Submitted

Babatunde Kareem Agoro
Etowah County Detention Facility
827 Forrest Avenue
Gadsden, Al. 35901

## CERTIFICATE OF SERVICE

I Babatunde Kareem Agoro, Pro se hereby affirm under the penalty of perjury that
the following is true, on the 9th Day of March 2012 served the Verified Petition for
a writ of Habeas Corpus pursuant to Section 2241 of the Title 28 of the United
States Code, And Motion for Expedited Hearing to the Clerk of the Court via U.S.
Postal Service, by Priority Mail and given it to the Institutional Staff Specialist to
Mail it in an Institutional Official Mail Room Addressed to:

UNITED STATES ATTORNEY'S OFFICE
NORTHERN DISTRICT OF ALABAMA
1801 Fourth Avenue North.
Birmingham, AL. 35203        Respectfully Submitted

**SWORN TO BEFORE ME THIS**
**9th Day of March 2012**
**NOTARY PUBLIC SEAL**

Babatunde Kareem Agoro

MY COMMISSION EXPIRES JANUARY 30, 2016

24

# SEE THE

# EXHIBITS

HOME    ABOUT US    PROGRAMS    TAKE ACTION    REPORTS    PRESS ROOM    BLOG    DONATE          search...          SEARCH



Home   Blog

## IMMIGRANT DETAINEES LANGUISH IN NOTORIOUS ETOWAH COUNTY DETENTION CENTER

Written by Jennifer Podkul, Program Officer, Detention & Asylum posted: September 22, 2011

The Etowah County Detention Center in Gadsden, Alabama, houses immigration detainees along with county inmates. The facility, which on any given day houses over 300 immigrants, is notorious for poor conditions. It is hours away from any immigration court or international airport , despite only housing people who have final orders of removal from the United States. Many of the detainees have been held here for months, if not years.

Etowah should be closed for two reasons. First, the facility is inappropriate for civil detention. It is a high security jail designed to hold dangerous criminals serving their jail sentences, not for civil offenders awaiting removal from the United States. Second, many of the detainees held at this facility cannot be removed from the United States, despite having been ordered removed, since they are victims of torture or persecution, or because the U.S. does not have an extradition agreement with the home country. The federal government should not ask taxpayers to foot the bill for this inhumane and unnecessary detention.

**How We Got Here:**

In 2010, after years of controversy around Etowah's dreadful conditions, the Obama administration promised to move toward a more civil form of detention by building newer, better facilities located closer to detainees' homes and families, to legal service providers and to good medical care. As a result, Immigration & Customs Enforcement (ICE) was set to terminate its contract with the facility and stop detaining immigrants there.

Realizing that the loss of the only ICE contract in Alabama would mean the loss of dozens of jobs and $5.2 million in revenue for the county, local officials went to Washington, D.C., and lobbied federal lawmakers to renew the contract. Federal officials succumbed to this pressure, and in April 2011, ICE renewed its contract with Etowah, to hold up to 325 immigrants there.

The jail has three units dedicated to housing civil detainees. These are large two-story rooms with tiny cells around the sides. Each cell holds two detainees, and the open space has metal tables and an exposed bathroom and shower area. Each large unit houses about 130 detainees. The only access detainees have to the outside is a small cement area that has a tiny grate in one corner of the ceiling that allows a bit of sunlight to enter. Being in Alabama, this "outdoor" space is hot, humid and suffocating.

The only way a detainee can see family, friends or an attorney is through a small television screen—never in person. The food is reportedly terrible (see letter, at end of this blog). Detainees who do not speak English must rely on hand gestures and the best guesses of medical professionals tasked with

### AREAS OF WORK

Detention & Asylum

Disabilities

Fuel & Firewood

Livelihoods

Reproductive Health

Women, Peace & Security

Youth

Watchlist



**SIGN UP**

First Name*

Last Name*

Email Address*





MAMA IS A COMMUNITY FOR MATERNAL HEALTH WORKERS HELPING WOMEN IN CRISES.





**OUR COMMUNITY**

providing mental and physical health care. The detainees are languishing in conditions that would reduce most of us to depression within a few days, but many are told upon arrival that they will be spending at least six months there. In 2001, the United States Supreme Court held that indefinite detention of unremovable immigrants (immigrants who have been ordered deported but have nowhere to go) under the plenary power doctrine was subject to Constitutional limitations. To justify detention of immigrants for a period longer than six months, the government was required to show that removal would occur in the foreseeable future, or to prove other special circumstances. It is important to note that the Supreme Court did not *mandate* the government to detain a person for six months before releasing him or her under an order of supervision; it allows that as the maximum.

During our recent visit to Etowah, the Women's Refugee Commission interviewed many detainees who were told upon entering the facility that they would have to be there for six months to "wait out" their time for release. This was despite the fact that immigration officials knew the government could not send them back to their home country and recognized the inevitably of their eventual release. Some men we interviewed had been there longer than six months, but did not have access to an attorney who could help them mount a legal challenge to this unconstitutional detention.

Due to the remote location of the facility, detainees do not have access to free or low-cost attorneys who can guide them through the complex requirements they must meet in order to be released after six months. Moreover, detainees cannot even be removed directly from this facility because it is not near an international airport. Although the government is ostensibly in the process of trying to deport all of the detainees held there, each detainee will need to be transferred to another facility before actually being removed from the United States.

By holding detainees in Etowah, the U.S. government is creating a purgatory-type of situation for the detainees. Officials are not releasing them using alternatives to detention programs, but they can't effectuate their removal either. The detainees are languishing in a legal no-man's land at taxpayer expense. The U.S. government seems to be explicitly using Etowah as a facility to hold immigrants it knows it will not be able to remove quickly, if at all, from the United States and with the full knowledge and expectation they will eventually be released, to be reunified with family here in the U.S..

This use of immigration detention is not acceptable and even less so after the Obama administration's promise to improve immigration detention conditions by creating the kind of civil conditions to which administrative detainees are entitled, rather than the punitive, criminal conditions to which they are currently subjected.

In this time of economic crisis, when government spending is being scrutinized, officials need to take a look at the immigration detention system and determine if it is an appropriate way to spend taxpayers' money.

Read a letter a detainee sent us about the inadequate food at the detention center.

A detainee outlines the dire conditions at the Etowah detention center.

2          0          Share

*Letter from Etowah*
**August 23, 2011**

Re: Grievance—Etowah County Detention Center

(List of concerns)

- Visitation: None Existent. Families are far away and facility will not compromise on rescheduled visitation periods/times.
- Telephone Access: Almost Zero. We are locked down 22 hours of the day, makes it almost impossible to reach/contact consulate, attorneys, and family members. Most family members cannot be usually reached until after 8 or 9 pm but we are unable to come out of our 2 man, 4 man or 6 man tanks.
- Law library: None—a room with two computers, two chairs, blank wall.
- Reference Books: None, cannot have a reference book when you do not have a library.
- Correspondence & Other Mail: Rampant rumor of mail disappearance (not going & coming) legal mails. Rampant tampering. Indigent detainees have to wait 30 days or once every 30 days to send out mails. Prior to written approval.
- Classification [of criminal level]: Retaliations are administered when you challenge or question errors in classification levels. A detainee was removed from his original assigned level [illegible] to a level 3 based on [illegible] regarding religious garb which is allowed by ICE.
- Grievance system: PBNDS [the 2008 Performance Based National Detention Standards] grievance response of 72 hours is nonexistent. Either complaints are thrown away or entirely disregarded by local ICE (facility) officials. You have to ask them.
- Detainee handbook: None was issued upon admission.
- Etowah County Detainee Handbook: None was issued upon admission. Was forced to sign and consent to a letter indicating issuances. This was done by Intake Sgt...
- Detainee Transfer: Please see Grievance filed or sent to ABA, was assaulted and abused. ICE Dallas did not follow the mandatory ICE PBNDS Detainee Transfer Protocol.
- Medical Care & Hunger Strike: Medical Requests yields zero response, have requested X-Rays, delta requests ith zero response.
- Recreation: What is that, none existent, PBNDS requires 1 hr., none, zero.
- Religious Practices: Zero. Ability to practice or wear religious headwear or scarf leads to level reclassification and segregation.
- Voluntary Work Program: Zero, privileged trustees who sell razors for use as a weapon. Indeed today August 23rd 2011, two were taken to segregation for that offense.
- Disciplinary System: Capricious, applied in a depriving manner. Varies from officer to officer.
- Search of Detainees: Varies, capricious, non-conformity.
- Abuse & Assault: Please refer to Emergency Grievance filed with OIG, ABA, and Joint Intake Center.

HELLO MS. Michele

I AM SORRY TO WRITE LIKE THIS but THIS NOT GOOD FOR ME ARE ANY ENMATE IN Etowah COUNTY DETENTION CENTER 827 FORREST AVE GASDEN AL 35901 AND THIS IS THE PROBLEM THEY ARE NOT FEEDING US NO FOOD WE ALL WAY HUNGRY STARVING its NOT ENOUGH FOOD WHY CANT SOME ONE HELP US BEFORE WE All die WE GET More Pills dAN FOOD WE NEED (HELP) THIS IS HOW THEY FEED US IN THE MORNING BREAK-Fast ONE SLICE OF BREAD AND ONE EGG THEN WE dont EAT back UNTIL 12:30 Which is LUNCH TIME AND GOD bLESS what THEY GAVE US THEN WE CANT EAT WE HAVE TO SAVE IT AND it is NOT ENOUGH THEN DINNER Time is About six o Clock we ? GET THAT much FOOD WE STAY HUNGRY STARVING WHY CANT SOME ONE HELP US PLEASE HELP PLEASE HELP FOR GOD SAKE PLEASE HELP US bEFORE WE (die) OF HUNGRY STARVATION COME QUICK

PLEASE dont TELL WE GET IN TROUBLE LIKE GO TO THE HOLE THAT what THE HAND BOOK SAY if you COMPLAINE THAT WHAT HAPPEN

HELP FAST

THIS IS HELL
ONU FIRE Missing.
GOD Bless
THANKS

U.S. Department of Homeland Security
Batavia, NY  14020



**U.S. Immigration
and Customs
Enforcement**

Kareem AGORO
A#24 624 753
C/O Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

**ALIEN COPY**

# Notice to Alien of File Custody Review

You are detained in the custody of U.S. Immigration and Customs Enforcement (ICE) and you are required to cooperate with ICE in effecting your removal from the United States.  ICE Field Director will review your case for consideration of release on an Order of Supervision, pursuant to 8 CFR 241. Release, however, is dependent on your demonstrating by "clear and convincing evidence" that you **will not** pose a danger to the community and **will not** be a significant flight risk. You must also demonstrate that a travel document is not available in the reasonable foreseeable future to effect your removal from the United States.

Your custody status will be reviewed on or about: **( 09/10/2010)**.  The Field Director may consider, but is not limited to considering the following:

1. The nature and seriousness of your criminal convictions;
2. Other criminal history;
3. Sentence(s) imposed and time actually served;
4. History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5. Probation history;
6. Disciplinary problems while incarcerated;
7. Evidence of rehabilitative effort or recidivism;
8. Equities in the United States;
9. Prior immigration violations and history; and
   Cooperation in obtaining your travel document.

You may submit any documentation you wish to be reviewed in support of your release, prior to the date listed above, to the attention of the Officer and address below. English translations must be provided pursuant to 8 CFR 103.2(b)(3).  An attorney or other person may submit materials on your behalf.  The Field Director will notify you of the decision in your case.

U.S. Department of Homeland Security
**Immigration and Customs Enforcement**
Attn:  Deportation Officer James Tracy
4250 Federal Drive
Batavia, New York 14020

## METHOD OF SERVICE

I certify that this form was provided to the alien by:   ☐   (Hand)   ☒   (Institution Mail)
☐ CC:  Attorney of Record or Designated Representative
☒ CC:  A-file

JUN 1 1 2010

_____        J. Tracy D.O.
Signature of Officer           Print Name of Officer        Date

A 24 624 753

# File Review Information Sheet ALIEN COPY

Please answer the questions below and send them back with any other letters of recommendation & support to your Deportation Officer for inclusion with your upcoming file review as soon as possible.

Attach all the information that you are submitting for your file review along with this questionnaire and return it to your Deportation Officer.

**Do you have a place to live in the United States?** ☐ Yes   ☐ No

    Address:
    Telephone :

For the above listed address, please provide the names of the persons who live there including your relationship:

Name:                          Relationship:
Telephone :
Name:                          Relationship:
Telephone :
Name:                          Relationship:
Telephone :

**What was your last address before living in the United States?**

    Complete Address:

**Are you subject to any parole or probation requirements?**   ☐ Yes   ☐ No

    Describe:
**If so, provide a copy of your parole/probation paperwork OR the name and telephone number of your probation/parole officer:**

Name:                          Telephone :

**Have you ever had a restraining order issued against you?**   ☐ Yes   ☐ No

If so, provide the following information:

Name:                          Relationship:
Address:
Telephone :
Name:                          Relationship:
Address:
Telephone :

ALIEN COPY

**Do you have close family ties within the United States?** ☒ Yes    ☐ No

Describe:

**Do you have any community ties or non-governmental sponsors?** ☒ Yes    ☐ No

Describe: CHURCH

**Do you have any employment prospects?** ☒ Yes    ☐ No

Describe: PROBLAY Consulting ARCHITECTURE

**Where have you worked before and when was the last time?**

Describe: PROBLAY Consulting ARCHITECTURE

**What is your educational level? What schools did you attend and where? Address & Location?**

Describe: B.F.A. B.ARCH

**Do you have any vocational training?**

Describe:

| NAME: | | District Office: | File #: |
|---|---|---|---|
| AGORO, Kareem | | BUF / BTV | A 24 624 753 |

Section 243(a) of the Immigration and Nationality Act provides, in part, that:

Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 237(a) who--

   (A)   willfully fails or refuses to depart from the United States within a period of 90 days* from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court,

   (B)   willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,

   (C)   connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, or

   (D)   willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,

shall be fined under title 18, United States Code, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 237(a)), or both.

Nothing in this section shall make it a violation to take proper steps for the purpose of securing cancellation of or exemption from such order of removal or for the purpose of securing the alien's release from incarceration or custody.

Any action the Immigration and Naturalization Service may take to obtain a travel document for your departure or to remove you will *NOT* relieve you of the liability for compliance with the provisions of law referred to in the first paragraph above.

*    Section 241(a)(1)(C) provides for the extension of the statutory removal period if the alien refuses, during the remov[al] make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires or prevent the alien's removal subject to an order of removal.

| Date Order Final: | Ordered Removed under Section: | |
|---|---|---|
| 09/19/1997 | 241(a)(2)(A)(ii) | |

| Record of Service |
|---|
| (Check method used) |

| ( X ) | Record of Personal Service | |
|---|---|---|
| Served By: (Print Name and Title of Officer) | | Date: |
| J. Tracy, Deportation Officer | | JUN 1 1 2010 |
| Officer's Signature: | Location of Service: | |
| *[signature]* | Buffalo Federal Detention Facility, Batavia, NY | |
| Served On: (Alien's Signature) | | Date: |
| *[signature]* | | JUN 1 1 2010 |

| (   ) | Warning administered in Court | Record of Personal Service (Cont.) |
|---|---|---|
| | (Copy of order attached) | |
| (   ) | Certified Mail Service | Fingerprint of Alien (Specify finger used) |

Attach certified mail receipts here.

Form I-229(a)
(Revised 12/04/02)

# INSTRUCTION SHEET TO DETAINEE
## REGARDING REQUIREMENT TO ASSIST IN REMOVAL

Detainee
Name:  AGORO, Kareem                          A#  24 624 753

☐ In order to comply with your obligation to assist in obtaining a travel document, the following is a list of items you are required to provide within 30 days of receiving this form:

| |
|---|
| Passports (current and expired) to the ICE. If you have a copy of your passport, you are to submit it. |
| Comply with all Instruction s from all embassies or consulates requiring completion of documentation for issuance of a travel document. |
| Birth certificates, national identification cards, and any other document issued by a foreign government indicating your citizenship, nationality, place of birth, and place of residence prior to entering the United States. |
| Request family and friends residing abroad contact your government in reference to issuing a travel document |
| Request family and friends residing in the United States to contact your embassy or consulate in the United States, in order to facilitate the issuance of a travel document. |

☐ You are being detained by ICE pending your removal from the Untied States. At this time, ICE has sufficient identity documents for you and is working with your consulate/embassy to obtain a travel document for you. In the event additional information or an interview is needed, you will be notified by your Deportation Officer.

*Failure to provide requested documents and/or failure to comply with requests may result in the extension of the removal period and subject you to further detention. In addition, you may be subject to criminal prosecution. If you need assistance in complying with any of the requirements, please contact a Deportation Officer in person or by completing a Case Management Worksheet.*

Alien's Signature _Barbs/Sereen Agru_

Served by: _____ on _JUN 1 1 2010_ at  _Buffalo Federal Detention Facility_
Officer's Name              Date                Location

(Rev. 01/2009)

*Office of Enforcement and Removal Operations*
*Field Office Name*

**U.S. Department of Homeland Security**
130 Delaware Ave
Buffalo, NY 14202



**U.S. Immigration
and Customs
Enforcement**

Babatunde Kareem AGORO                                       A24 624 753
C/O Buffalo Federal Detention Facility
A24 624 753
4250 Federal Drive
Batavia, NY 14020

## Notice to Alien of Interview for Review of Custody Status

It is the policy of U.S. Immigration and Customs Enforcement (ICE) to periodically review the custody status of detained aliens who have final orders of removal, deportation or exclusion. You are required to cooperate with ICE in effecting your removal from the United States.

Release from ICE custody is dependent on your demonstrating to the satisfaction of the Attorney General that you **will not** pose a danger to the community and **will not** present a flight risk.

You will be interviewed for this purpose and you are scheduled to appear for this interview on:  __06/24/2011__  at:  __2:00 p.m.__ , at  __Batavia, NY__
     (Date)          (Time)            (Location)
to discuss whether or not you will be recommended for release.

In determining whether you should be released at this time, ICE may consider, but is not limited to considering the following:

1. Criminal convictions and criminal conduct;
2. Other criminal history and immigration history;
3. Sentence(s) imposed and time actually served;
4. History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5. Probation history;
6. Disciplinary problems while incarcerated;
7. Evidence of rehabilitative effort or recidivism;
8. Equities in the United States; and
9. Cooperation in obtaining your travel document.
10. Any available mental health reports.

You are required to complete the information on the following page. You will be notified of the decision in your case when the custody review has been concluded.

Notice to Alien of Interview for Review of Custody Status
A24 624 753, Babatunde Kareem AGORO
Page 2

I do __✓__ do not _____ want a personal interview.

**If you do want an interview, please check the appropriate box(es) below:**

B.K. ☒   Check this box if you need an interpreter for your interview.
Language/Dialect: _____

☐   I will be assisted at this interview by a representative of my own choosing.

Name: _____
I understand I must notify this person of the time and place of my interview.  The
representative must be at least 18 years of age.

B.K. ☑   I waive any representation.

You may submit any additional documentation you wish to be considered in support of your
release at the time of your interview.  English translations must be provided pursuant to 8 CFR
103.2(b)(3).

## PROOF OF SERVICE

**(1)   Personal Service (Officer to complete both (a) and (b) below.)**

(a)   I ___JEFFREY CRANE___ , ___DEPORTATION OFFICER___ ,
　　　　　　　　Name of ICE Officer　　　　　　　　　　Title

certify that I served ___AGORO, Kareem Babatunde___ with a copy of
　　　　　　　　　　　　　　Name of detainee

this document at ___BFDF___ on _6/23/2011_ , at ___0930___ .
　　　　　　　　　Institution　　　　　　　Date　　　　　Time

(b)   I certify that I served the custodian _____ .
　　　　　　　　　　　　　　　　　　　　　Name of Official

_____ , at _____ , on
　　Title　　　　　　　　　　　　Institution
_____ with a copy of this document.
　　Date

## OR

**(2)   Service by certified mail, return receipt.  (Attach copy of receipt)**

I _____ , _____ , certify
　　　Name of ICE Officer　　　　　　　　　Title

that I served _____ and the custodian _____ .
　　　　　　　Name of detainee　　　　　　　　　　　Name of Official

with a copy of this document by certified mail at _____ _____ on _____ .
　　　　　　　　　　　　　　　　　　　Institution　　　　　　　Date

( ) CC: Attorney of Record or Designated Representative
( ) CC: A File

*Enforcement and Removal Operations*
U.S. Department of Homeland Security
500 12th Street, SW
Washington, DC 20536



U.S. Immigration
and Customs
Enforcement

AGORO, Kareem Babatunde                                              A24 624 753
C/O Immigration & Customs Enforcement
Buffalo Field Office

## Decision to Continue Detention

This letter is to inform you that the U.S. Immigration and Customs Enforcement (ICE), has reviewed
your custody status and determine that you will not be released from custody at this time. This decision
was based on a review of your file record and/or personal interview and consideration of any
information you submitted to ICE reviewing officials.

You are a native and citizen of Nigeria, who entered the United States at Brooklyn, NY on January 5,
1980, as a visitor for pleasure with authorization to remain in the United States for a temporary period
not to exceed six months. You remained in the United States beyond the temporary period without
authorization. On December 1, 1983, you adjusted your status to that of a Lawful Permanent Resident.
You were convicted of the following offenses; Credit Card Fraud and Related Activity in Connection
with Access Device. You were ordered removed from the United States by an Immigration Judge on
November 29, 2005. You filed multiple appeals that subsequently were all denied making your order
final on September 27, 2007.

On June 24, 2011, a panel was convened at Batavia, New York, to conduct an in-person interview and
review your custody status.

A request for a travel document was submitted to the government of Nigeria and ICE is currently
working with the government of Nigeria in securing a travel document for your removal from the United
States. There is no reason to believe at this time that your removal will not take place within the
reasonably foreseeable future.

This decision, however, does not preclude you from bringing forth evidence in the future to demonstrate
a good reason why your removal is unlikely. You are advised that pursuant to Section 241(a)(1)(C) of
the Immigration and Nationality Act (INA) you must demonstrate that you are making reasonable efforts
to comply with the order of removal, and that you are cooperating with ICE efforts to remove you by
taking whatever actions ICE requests to effect your removal.

(rev. 1/26/05)

**Decision - Detain**
A24 624 753- AGORO, KAREEM BABATUNDE
Page 2

You are also advised that any willful failure or refusal on your part to make timely application <u>in good faith</u> for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC § 1253(a).

_____
Daniel A. Bible
Signature of HQCMU Chief

_10_/_12_/_2011_
Date

U.S. Department of Homeland Security
Immigration and Customs Enforcement

Warning for Failure to Depart

| NAME: | | District Office: | File #: |
|---|---|---|---|
| AGORO, Kareem | | BUF / BTV | A24 624 753 |

Section 243(a) of the Immigration and Nationality Act provides, in part, that:

> Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 237(a) who--
>
> (A)  willfully fails or refuses to depart from the United States within a period of 90 days* from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court,
>
> (B)  willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,
>
> (C)  connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, or
>
> (D)  willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,
>
> shall be fined under title 18, United States Code, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 237(a)), or both.

Nothing in this section shall make it a violation to take proper steps for the purpose of securing cancellation of or exemption from such order of removal or for the purpose of securing the alien's release from incarceration or custody.

Any action the Immigration and Naturalization Service may take to obtain a travel document for your departure or to remove you will *NOT* relieve you of the liability for compliance with the provisions of law referred to in the first paragraph above.

*     Section 241(a)(1)(C) provides for the extension of the statutory removal period if the alien refuses, during the remov__ make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires o__ prevent
the alien's removal subject to an order of removal.

| Date Order Final: | Ordered Removed under Section: 241a2Aii |
|---|---|
| 09/27/2007 | |

### Record of Service
### (Check method used)

| ( X ) | Record of Personal Service | | |
|---|---|---|---|
| Served By:  (Print Name and Title of Officer) | | | Date: 8/13/2010 |
| S. Hunter  IEA | | | |
| Officer's Signature: | | Location of Service: | |
| | | Buffalo Federal Detention Facility, Batavia, NY | |
| Served On:  (Alien's Signature) | | | Date: 8/13/2010 |

| ( ) | Warning administered in Court (Copy of order attached) | Record of Personal Service (Cont.) |
|---|---|---|
| ( ) | Certified Mail Service | Fingerprint of Alien  (Specify finger used) |

**Attach certified mail receipts here.**

Form I-229(a)

## INSTRUCTION SHEET TO DETAINEE
## REGARDING REQUIREMENT TO ASSIST IN REMOVAL

Detainee
Name:            AGORO, Kareem                          A#:   A24 624 753

☒ In order to comply with your obligation to assist in obtaining a travel document, the following is a list of items you are required to provide within 30 days of receiving this form:

> Passports (current and expired) to the ICE. If you have a copy of your passport, you are to submit it.
> Birth certificates, national identification cards, and any other document issued by a foreign government indicating your citizenship, nationality, place of birth, and place of residence prior to entering the United States.

☐ You are being detained by ICE pending your removal from the United States. At this time, ICE has sufficient identity documents for you and is working with your consulate/embassy to obtain a travel document for you. In the event additional information or an interview is needed, you will be notified by your Deportation Officer.

*Failure to provide requested documents and/or failure to comply with requests may result in the extension of the removal period and subject you to further detention. In addition, you may be subject to criminal prosecution. If you need assistance in complying with any of the requirements, please contact a Deportation Officer in person or by completing a Case Management Worksheet.*

Alien's Signature _Bubs Sheeur A gu_

Served by: _____ on __08/13/10__ at __Buffalo Federal Detention Facility__
            *Officer's Name*                 *Date*              *Location*

(Rev. 01/2009)

Babatunde Kareem Agoro
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia New York 14020
August 15 th 2011

Mr. Magee/Mr. Delong [Deportation Officer] Respectively
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia New York 14020.

I respectfully requests from the above deportation officers respectively.

1. The Custody Reviews Interview that was conducted on the 24th of June 2011

2. The Copy of the Recomendations to ["HQPDU"].

I need the above as to Justify Whether the decision to continue detention for a

well over Two decades old conviction of Credit Card Fraud of $1696 that may well not

provide legal grounds for deportation Justified a decision to [CONTINUE DETENTION]

per your recommendation to the ["HQPDU"].

However, Agoro claims that the custody reviews performed by this officers during the

Habeas litigation were ["GROSSLY DEFECTIVE"] in Constitutional terms and that its

decisions to continue detention have neither been in accordance either with due

process requirements as interpreted by the Supreme Court in Zadvydas.

nor in compliance with DHS'S own regulations and now more than two decades old

conviction  as justification to confine Agoro is ["PATENTLY UNREASONABLE"].

It is also to be noted that Agoro has not yet received the rigorous of his eligibility

for release that due process requires, in addition to failing to provide Agoro with

certain procedures guaranteed by the regulations, e.g. 180-Day reviews, thus

this decision to continue detention by your recommendation contain

["GLARING DEFFICIENCIES"] with regard to consideration of the required release

factors, and it should be noted that a special justification outweighs the individual's

constitutionally protected interest in avoiding physical restraint in deportation and

removal cases, the stakes are high and .... ["Grudging and Perfunctory"] review is

not enough to satisfy the due process right to liberty .... "Id . Quoting Ngo 192 F. 3d

at 389. "The assessment of flight risk and danger to the community must be made

on a current bases, "Id "citing  Ngo 192 F. 3d 398, and to presume dangerousness

to the community and risk of flight based on ["An Alien's"] past record does not

satisfy due process, thus, I respectfully requests for the above copy of the custody

review interviews and a copy of your recommendations to the ["HQPDU"].


                              Respectfully Submitted

                              Babatunde Kareem Agoro

*Office of Enforcement and Removal Operations*
*Buffalo Field Office*

**U.S. Department of Homeland Security**
130 Delaware Avenue
Buffalo, New York 14202



**U.S. Immigration
and Customs
Enforcement**

AUG 1 8 2011

AGORO, Kareem Babatunde
A24 624 753
4250 Federal Drive
Batavia, New York 14020

Dear Mr. Agoro:

Reference is made to your letter dated August 15, 2011, requesting that Deportation Officers Magee and DeLong provide you with copies of custody reviews and recommendations from your file. Any documents you wish to obtain from your Alien Registration File must be requested via the Freedom of Information Act, using the attached form G-639, Freedom of Information/Privacy Act Request.

Sincerely,

Diana M Miller-Jones
Acting Assistant Field Office Director



CONSULATE GENERAL OF NIGERIA

NIGERIA HOUSE

828 Second Avenue, New York, New York 10017

Tel: 212 808-0301 . Fax: 212 687-1476
nigeriahouse.com

**Ref. No. 500/45/C/Vol.II**

December 16, 2011

**Embassy of the Federal Republic of Nigeria**
3519 International Court
Washington D.C. 20008

Dear Chancery,

### Re:    BABATUNDE KAREEM AGORO- ALIEN NUMBER: 024624753

We wish to forward, herewith, for your information and further necessary action, copies of two letters written by this Consulate at the request of Babatunde Kareem Agoro, who was previously detained at the Buffalo Federal Detention Facility, 4250 Federal Drive, Batazia, NY, which is within the Consulate's Jurisdiction, but has since been moved to the Etowah County Detention Facility, located at 827 Forest Avenue, Gadsden, Alabama 35901.

It is this Consulate's understanding from inmates in detention facilities that, when foreign nationals are detained continuously in Immigration Detention Facilities beyond 180 days, in violation of ***CFR 241,*** a letter from the foreign nationals' Consulate or Embassy, usually facilitates the early release of the detained foreign national, back into civil society, until Immigration authorities show that they are ready and capable of removing the foreign nationals, back to their home Country without delay.

As a result of above, on August 5, 2011, the Consulate wrote to the immigration authorities in Buffalo, New York, requesting Mr. Agoro's release. However, instead of releasing Mr. Agoro, he was transferred to another facility and has now once again reached out to the Consulate for intervention, by way of similar letter to be sent to Mr. Phillips Miller, his new Field Director in New Orleans, asking for an early release, pending if and when, I.C.E. is ready, able to remove him, in the unfortunate event his appeal is denied. In doing so, he informed the Consulate that he still has Appeals pending on his case, a fact that has since been verified by the Consulate.

Mr. Agoro and his family have expressed concern about the possibility of I.C.E. receiving the letter from New York and out of sheer mischief, sending a separate request for travel documents to the Embassy in Washington or Consulate in Atlanta, hence the need to send copies of the document to our Embassy in Washington, DC and Consulate in Atlanta, hence the need for this letter.

Yours Ever,
Chancery

CC: Consulate General of Nigeria, Atlanta
     8060 Roswell Road
     Atlanta, GA 30350



### CONSULATE GENERAL OF NIGERIA
### NIGERIA HOUSE

828 Second Avenue, New York, New York 10017

Tel: 212 808-0301 . Fax: 212 687-1476
nigeriahouse.com

**Ref. No. 500/93/C/Vol.9**

December 16, 2011

Mr. Phillips T. Miller
Field Office Director
Immigration and Customs Enforcement
Department of Homeland Security
1250 Poydras, Ste. 325
New Orleans, LA 70113

**RE:   BABATUNDE KAREEM AGORO- ALIEN NUMBER: 024624753**

     The Consulate General of Nigeria, New York has received several letters and telephone calls from Mr. Babatunde Kareem Agoro, informing that, since January 16th 2009, he has been detained by the Immigration and Customs Enforcement (ICE), for a continuous period, without release, in violation of **CFR. 241.**

     Mr. Agoro has provided the Consulate with documentation to show that he has several appeals/ applications pending. Kindly note that the Nigerian Consulate has a policy of issuing travel documents to aid the removal of Nigerian citizens detained in the United States, **only** after it has interviewed the said detainees and is satisfied that they have no applications pending.

     It is also this Consulate's understanding that Mr. Agoro has remained continuously in the United States for over thirty years, since his first entry on January 5th 1980, and has a disabled American Citizen spouse, whom he has been married to for Thirty three years and their union is blessed with five American citizen children and four grand children, all residing here in the United States. Prior to his detention, Mr. Agoro was the major bread winner of his large family, and since his protracted detention, his family has suffered extreme and unusual hardship, and has been forced to rely on charity.

While this Consulate regrets Mr. Agoro's past conviction, it is pleased to state that, Mr. Agoro has since been reformed and is the founder and senior pastor of The Prayer House Deliverance Church, where prior to his arrest, he has positively mentored a number of young adults, thereby making a remarkable impact in his community.

In light of the above, this Consulate most humbly requests that since Mr. Agoro is well entrenched in his community and has deep family roots here in Brooklyn, he is not a flight risk and so should be granted a conditional release pending the determination of all his appeals, since it is clear that he can not be removed until he has exhausted all remedies available to him under the United States legal system.

We would be grateful if kind consideration is given to our request.

Thank you.

G. Nnaji

For: Consul General

Cc: Officer Chris Purdy
    Etowah County Detention Facility
    827 Forest Avenue
    Gadsden, AL 35901
    USA

**Embassy of the Federal Republic of Nigeria**
3519 International Court
Washington D.C. 20008

The Consul General
Consulate General of Nigeria, Atlanta
8060 Roswell Road
Atlanta, GA 30350

Babatunde Kareem Agoro
New Orleans
USA



CONSULATE GENERAL OF NIGERIA

NIGERIA HOUSE

Tel: 212 808-0301 . Fax: 212 657-1457
nigeriahouse.com

Mr. Michael Phillips
Field Office Director
Immigration and Customs Enforcement
Department of Homeland Security
Office of Removal
130 Delaware Avenue
Buffalo, NY 14202

## RE:   BABATUNDE KAREEM AGORO- ALIEN NUMBER IS: 024624753

The Consulate General of Nigeria, New York has received several letters and telephone calls from Mr. Babatunde Kareem Agoro, informing that, since January 16th 2009, he has been detained by The Immigration and Customs Enforcement (ICE), for a continuous period, without release, in violation of *CFR. 241.*

The Consulate has made several inquires on Mr. Agoro's case and has confirmed that no request for travel documents have been sent to its office, because Mr. Agoro has several appeals/ applications pending. It should be noted that the Nigerian Consulate has a policy of issuing travel documents to aid the removal of Nigerian citizens detained in the United States, **only** after it has interviewed the said detainees and is satisfied that they have no applications pending.

It is also this Consulate's understanding that Mr. Agoro has remained continuously in the United States for over thirty years, since his first entry on January 5th 1980, and has a disabled American Citizen spouse whom he has been married to for Thirty three years and their union is blessed with five American citizen children and four grand children, all residing here in the United States. Prior to his detention, Mr. Agoro was the major bread winner of his large family, and since his protracted detention his family has suffered extreme and unusual hardship, and has been forced to rely on charity.

While this Consulate regrets Mr. Agoro's April 1st 1992 conviction, it is pleased to state that, Mr. Agoro has since been reformed and is the founder and senior pastor of The Prayer House Deliverance Church, where prior to his arrest, he has positively mentored a number of young adults, thereby making a remarkable impact in his community.

In light of the above, this Consulate most humbly request that since Mr. Agoro is well entrenched in his community and has deep family roots here in Brooklyn, he is not a flight risk and so should be granted a conditional release pending the determination of

all his appeals. Since, it is clear that he can not be removed until he has exhausted all remedies available to him under the United States legal system.

We would be grateful if kind consideration is given to our request.

Thank you.

G. Onaji

For: Consul General